IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TONY FISHER, aka KELLIE REHANNA, | ) ) ) | CASE NO. 4:19CV1169 |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, et al, | ) ) | FEDERAL DEFENDANTS' MEMORANDUM |
| Defendants. | ) ) ) ) ) | IN SUPPORT OF MOTION TO DISMISS |

INTRODUCTION

Pro se Plaintiff Tony R. Fisher, a male-to-female transgender federal inmate incarcerated at Federal Correction Institution Elkton ("FCI Elkton"), who is also known as Kellie Rehanna, raises a number of Eighth Amendment claims against federal agencies and prison personnel in their official capacities based on allegedly inadequate medical care and inadequate conditions of confinement. More specifically, Plaintiff challenges the denial of her request for sex reassignment surgery; the Federal Bureau of Prison's ("BOP") alleged use of medical professionals who lack expertise in treating transgender individuals; the use of male corrections officers to conduct pat downs; the alleged inability to obtain certain female clothing and grooming items from the prison commissary; and the lack of stall doors on a particular restroom stall in the prison recreation area. Plaintiff also appears to mount a vague, unexhausted facial challenge to BOP's policy concerning the treatment and housing of transgender inmates.

As discussed below, Plaintiff has failed to set forth any plausible Eighth Amendment claims in her complaint and attachments. Indeed, the attachments to Plaintiff's complaint directly contradict many of her claims, and establish that prison officials were not deliberately indifferent to Plaintiff's medical needs. Plaintiff's Eighth Amendment claims thus fail as a matter of law. Moreover, Plaintiff's claim for monetary damages against the United States is barred by sovereign immunity. Accordingly, the Court should dismiss Plaintiff's claims with prejudice.

I. STATEMENT OF FACTS

On July 7, 2015, Plaintiff arrived at FCI Elkton, where she is currently incarcerated. (Compl. ECF No. 1 ¶ 17, PageID # 9; id., Attach. 7 Corrected Ex. B, PageID # 332.)[1] Plaintiff, a

---

[1] For purposes of this motion to dismiss under Fed. R Civ. P. 12(b)(6), the well-pled factual allegations are accepted as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

biological male, identifies as a female and was diagnosed with Gender Dysphoria on July 7, 2015. (Id. ¶ 4, PageID # 5; id., Attach. 7 Corrected Ex. B, PageID # 332 and 372.)

Throughout Plaintiff's incarceration at FCI Elkton, she has continued to receive medical treatment for her Gender Dysphoria, including counseling and hormone therapy. (Id., ¶¶ 58-59, 71, 74, PageID # 28, 34, 35; id., Attach. 7 Corrected Ex. B, PageID # 274, 332, 389, 402, 405, 410.) For example, Plaintiff began receiving estrogen hormones to treat her Gender Dysphoria shortly after her arrival at FCI Elkton on October 2, 2015. (Id., Attach. 7 Corrected Ex. B, PageID # 332.)

Although Plaintiff has requested sex reassignment surgery ("SRS"), the BOP denied this request because it made the reasonable medical judgment, based on an individualized assessment of the Plaintiff, that such surgery was not medically necessary or appropriate. (Id., Attach. 7 Corrected Ex. B, PageID # 332, 334, 337-38.) More specifically, after analyzing the details of Plaintiff's medical condition, the BOP had concerns about Plaintiff's stability using female hormones. For example, although Plaintiff has been provided estrogen to treat her Gender Dysphoria, after Plaintiff's estrogen levels elevated, medical personnel at FCI Elkton temporarily stopped providing her with estrogen and then resumed providing estrogen two weeks later after her levels stabilized. (Id., Attach. 7 Corrected Ex. B, PageID # 386, 389, 402, 405.) Plaintiff does not challenge that medical judgment in the complaint. The BOP also determined that Plaintiff failed to meet the criteria for being transferred to a female prison and consequently could not socially transition to living as a female, which is a prerequisite for surgical transition. (Id., Attach. 7 Corrected Ex. B, PageID # 389). Once again, Plaintiff does not challenge that decision in the complaint. Based on Plaintiff's failure to reach the maximum level of benefit from estrogen use and the failure to meet the criteria for transfer to a female prison, the BOP reached the medical judgment that Plaintiff is not currently a proper candidate for SRS. (Id., Attach. 7 Corrected Ex. B, PageID # 386, 389, 402, 405.)

Plaintiff further alleges in the complaint that the two toilets in one bathroom in the recreation department at FCI Elkton do not have stall doors like the toilets in other bathrooms throughout the facility. (Id., Attach. 7 Corrected Ex. B, PageID # 314, 319-28.) As reflected in an attachment to Plaintiff's complaint, a sign on the door of the bathroom in the recreation area indicates that it is to be occupied by one inmate at a time, and there is a physical door at the bathroom entrance to protect the privacy of all inmates that may use the toilet. (Id.) Plaintiff concedes that the toilets without stall doors in the recreation department have an exterior door at the entrance of the bathroom, but contends that the exterior door does not lock to provide additional security and privacy. (Id., Attach. 7 Corrected Ex. B, PageID # 323.) Consequently, an inmate allegedly was able to walk in the bathroom while Plaintiff was inside using the toilet. (Id., Attach. 7, Corrected Ex. B, PageID # 311-12).

Plaintiff also alleges in the complaint that Plaintiff has been deprived of the ability to obtain certain female undergarments and grooming items. (Id. ¶¶ 85-86, PageID # 40-41.) An attachment to Plaintiff's complaint reflects that the BOP has in fact provided Plaintiff permission to obtain female undergarments and grooming items by providing her with a sports bra and giving Plaintiff an opportunity to request and potentially purchase additional female grooming and/or clothing items in the prison commissary in accordance with the BOP Transgender Offender Manual, U.S. Department of Justice, Federal Bureau of Prisons Program Statement 5200.04 (May 11, 2018) https://www.bop.gov/policy/progstat/5200-04-cn-1.pdf. (Id., Attach. 7 Corrected Ex. B, PageID # 353, 356-58.)

Plaintiff filed an administrative claim to be exclusively searched and/or patted down by female personnel at FCI Elkton. (Id., PageID # 446, 449, 460.) Since the BOP has no legal obligation to do so, it denied this claim. (Id.) The BOP also denied Plaintiff's request to be treated by specialists outside of FCI Elkton, because the prison has medical personnel properly trained to treat

3

Plaintiff's Gender Dysphoria. (Id., Attach. 7 Corrected Ex. B, PageID # 331-332, 392, 395, 402.)

Finally, Plaintiff filed an administrative claim and alleged, among other things, that the male employees at FCI Elkton violated the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. §§ 30301-30309, by failing to announce their presence when Plaintiff is showering, changing clothes, and/or performing other functions, to minimize the opportunity for them to see Plaintiff naked or without all of her clothing. (Id., Attach. 7 Corrected Ex. B, PageID # 359-362, 365, 368.) The BOP denied this claim because, among other reasons, an internal audit revealed officials at FCI Elkton followed applicable law and applicable BOP procedures. (Id.)

## II.  LAW AND ARGUMENT

### A.  RULE 12(b)(1) AND RULE 12(b)(6) STANDARDS

Because federal courts are courts of limited jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Scurlock v. Lappin, 870 F. Supp. 2d 116, 118-19 (D.C. 2012) (citing Lujan v. Defenders of Wildlife, 504 U.S. 55, 561 (1992)). This burden includes the identification of a waiver of its sovereign immunity, and the failure to carry that burden warrants dismissal under Fed. R. Civ. P. 12(b)(1). Id.; United States v. Sherwood, 312 U.S. 584, 590-91 (1941).

A lawsuit against a federal employee in his or her official capacity is a suit against the United States. Dotson v. Wilkinson, 477 F. Supp. 2d 838, 852 (N.D. Ohio 2007). The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. Sherwood, 312 U.S. at 590-91. Congress defines the exact terms and conditions upon which the government and its agencies may be sued, and the terms of its consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. Honda v. Clark, 386 U.S. 484, 501 (1967). A waiver of sovereign

immunity must be strictly construed, unequivocally expressed, and cannot be implied. Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (citing Lane v. Pena, 518 U.S. 187, 192 (1996)). In this case, the United States has not waived its sovereign immunity for monetary damages for a violation of the Eighth Amendment. See, e.g., Corr. Servs. Corp., v. Malesko, 534 U.S. 61, 69-71 (2001); F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994). In order to maintain a claim against individual federal employees under the Eighth Amendment for money damages, the Plaintiff must file a claim against the federal employees in their individual capacities, as opposed to their official capacities. Malesko, 534 U.S. at 72.

A dismissal under Fed. R. Civ. P. 12(b)(6) is warranted when the allegations in the non-moving party's complaint, pleadings, and attached materials are assumed to be true, and there is, nevertheless, an insufficient basis to maintain a viable claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007); Mayer v Mylod, 988 F.2d 635, 638 (6th Cir. 1993). In other words, "[a] complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Greene v. U.S. Dep't of Justice, No. 6:19-024-GFVT, 2019 WL 5395442, at *1 (E.D. Ky. Oct. 22, 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Hill v. Lappin, 630 F.3d 468, 471 (6th Cir. 2010)). A dismissal under Rule 12(b)(6) is warranted when: (1) there is an absence of law to support the type of claim being made; (2) there are insufficient facts to make a valid claim; or (3) if on the face of the complaint, an insurmountable bar to relief indicates that the plaintiff does not have a claim. Little v. UNUM Provident Corp., 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)); O'Brien v. Univ. Cmty. Tenants Union, Inc., 327 N.E. 2d 753, 754-55 (Ohio 1975). However, in considering the propriety of a motion to dismiss, the Court can look beyond the four corners of the complaint and consider attached documents and exhibits that are referenced in the complaint and central to the plaintiff's claims, without converting the motion to dismiss to a motion for summary judgment. Whittiker v. Deutsche Bank Nat'l

5

Trust Co., 605 F. Supp. 2d 914, 924-25 (N.D. Ohio 2009); Fed. R. Civ. P. 12(b)(6).  When these above-referenced standards are applied to Plaintiff's complaint, it is clear that the Defendants are entitled to a judgment in their favor as a matter of law pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Id.

    B.    PLAINTIFF HAS FAILED TO ALLEGE A PLAUSIBLE EIGHTH AMENDMENT CLAIM AGAINST THE DEFENDANTS

The allegations in Plaintiff's complaint, when read in conjunction with the attachments to the complaint, fail to establish any plausible claims under the Eighth Amendment.  A plausible Eighth Amendment claim requires Plaintiff to establish that Defendants were deliberately indifferent to Plaintiff's serious medical needs and that Plaintiff has more than a mere difference of opinion regarding the appropriate medical care she should have received.  Estelle v. Gamble, 429 U.S. 97, 104-05, 107 (1976). Making allegations that are akin to medical malpractice claims are insufficient to maintain a viable Eighth Amendment claim. Id. at 104; Farmer v. Brennan, 511 U.S. 825, 835 (1994). In fact, federal courts are reluctant to second-guess medical judgments where prisoners, like Plaintiff, have received some medical attention and subsequently dispute the adequacy of that medical care. Westlake v. Lucas, 537 F.2d 857, 860, n.5 (6th Cir. 1976).

Instead, Plaintiff has to establish officials at FCI Elkton were "so deliberately indifferent to [Plaintiff's] serious medical needs as to unnecessarily and wantonly inflict pain…." Horn by Parks v. Madison Cty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994) (citing Estelle, 429 U.S. at 104.)  Federal courts have established a test with both objective and subjective components to determine whether the deliberate-indifference standard has been satisfied.  Brown v. Bargery, 207 F.3d 863, 866-67 (6th Cir. 2000).  The objective component requires the inmate to allege that the deprivation is sufficiently serious and that she is incarcerated under conditions posing a substantial risk of serious harm.  Id.  To satisfy the subjective component of the test, the inmate must demonstrate that the prison officials had a sufficiently culpable mind by knowing of and disregarding an excessive risk to inmate health and

safety. Id. (citing Farmer, 511 U.S. at 834). However, as previously stated, where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and "to constitutionalize claims that sound in state tort law." Graham ex rel. Graham v. Cty. of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting Westlake, 537 F.2d at 860, n. 5); Williams ex rel. Wade v. Mehra, 186 F.3d 685, 691 (6th Cir 1999). As discussed below, Plaintiff has failed to adequately plead any legally cognizable Eighth Amendment violations, and her complaint consequently should be dismissed.

       1.     Sex Reassignment Surgery (SRS)

The undisputed allegations in Plaintiff's complaint and attached exhibits indicate that she has received medical and psychological treatment and extensive hormone therapy at FCI Elkton for her Gender Dysphoria. (Compl., ECF No. 1, ¶¶ 58-59, 71, 74, PageID # 28, 34-35; id., Attach. 6 Ex. E, PageID # 274; id., Attach. 7 Corrected Ex. B, PageID # 332, 389, 402, 405, 410.) Plaintiff does not allege that prison officials ignored Plaintiff's Gender Dysphoria, refused to provide hormone therapy, and/or failed to provide treatment based upon her specific medical needs. (Id.); Spisak v. Wilkinson, No. 1:01 CV 136, 2001 U.S. Dist. Lexis 27619, at *8-9 (Chief Judge Gaughan, N.D. Ohio Apr. 27, 2001); Parker v. Bowen, No. 4:18cv1744, 2018 U.S. Dist. LEXIS 203356, at * 3-5 (Judge Pearson, N.D. Ohio, Nov. 30, 2018). Instead, Plaintiff simply disputes the judgment of medical and psychological staff at FCI Elkton that SRS is unwarranted at this juncture. Murray v. U. S. Bureau of Prisons, No. 95-5204, 1997 U.S. App. LEXIS 1716, at *10-13 (6th Cir. Jan. 28, 1997). A mere difference of opinion about the medical care provided is insufficient to maintain a viable Eighth Amendment claim. Dodson v. Wilkinson, 304 F. App'x 434, 440 (6th Cir. 2008) (An inmate's "disagreement with the testing and treatment he has received…does not rise to the level of an Eighth Amendment violation"). Similarly, in the present case, Plaintiff simply disputes the type of care she has consistently received, as opposed to presenting allegations that prison officials deliberately failed

to provide any medical care. (Compl., ECF No. 1, ¶¶ 58-59, 71, 74, PageID # 28, 34-35; id., Attach. 7 Corrected Ex. B, PageID # 274, 332, 389, 402, 405, 410.) Consequently, Plaintiff's Eighth Amendment claim for SRS must fail. Spisak, 2001 U.S. Dist. Lexis 27619, at *8-9; Parker, 2018 U.S. Dist. LEXIS 203356, at * 3-5; Murray, 1997 U.S. App. LEXIS 1716, at *10-13.

    Plaintiff's Eighth Amendment claim regarding her request for SRS must also fail because rather than exhibit deliberate indifference toward Plaintiff's medical needs, the BOP's decision to deny this specific surgical request is a result of a careful medical review of Plaintiff's history of unstable estrogen levels and other ailments, which made her an inappropriate candidate under BOP guidelines. (Compl., ECF No. 1, Attach. 6 Ex. E, PageID # 275; id., Attach. 7 Corrected Ex. B, PageID # 400-402, 405); Bentley v. Crews, No. 5:19-CV-P79-TBR, 2019 U.S. Dist. LEXIS 134099, at * 6-7 (J. Russell, W.D. Ky. Aug. 9, 2019) (Court upheld denial of prisoner's request for SRS because, among other reasons, medical reviews indicated that inmate did not meet established BOP criteria). Farmer, 511 U.S. at 834. Plaintiff does not challenge the BOP's decision to adjust her medications due to the lack of stability of her hormone levels, or contend that this decision did not reasonably justify denying her request for surgical transition at this juncture. Like Bentley, the surgery was denied because medical reviews indicated that Plaintiff did not meet applicable BOP medical standards—standards which Plaintiff does not challenge. Bentley, 2019 U.S. Dist. Lexis 134099, at *6-7. Moreover, BOP's medical professionals found that Plaintiff failed to meet the criteria for being transferred to a female prison, and consequently could not have a social transition, which is a prerequisite to obtaining SRS. (Compl., ECF No. 1, Attach. 7 Corrected Ex. B, PageID # 389.) Again, Plaintiff does not challenge the judgment of the BOP's experts that Plaintiff was not an appropriate candidate for placement in a female prison and that, accordingly, Plaintiff cannot socially transition. Indeed, Plaintiff acknowledges in her complaint that the World Professional Association for Transgender Health Standards of Care generally require that, after the administration of hormones, the individual have a social transition by living in his or her

preferred gender role before being considered for SRS. (Id., ¶ 54, PageID # 25-26.) Because Plaintiff's complaint and attachments directly undermine her claim that the denial of SRS was based on deliberate indifference by the BOP, Plaintiff's Eighth Amendment claim for SRS must fail. Bentley, 2019 U.S. Dist. Lexis 134099, at *6-7.

Finally, the decision not to provide SRS does not violate the Eighth Amendment because medical science is far from certain regarding whether this surgery is necessary or the only way to treat Plaintiff's Gender Dysphoria. Gibson v. Collier, 920 F.3d 212, 220 (5th Cir. 2019) (noting that "there is no consensus in the medical community about the necessity and efficacy of sex reassignment surgery as a treatment for gender dysphoria," and therefore no Eighth Amendment violation for the denial of such surgery). As the Fifth Circuit has explained, "[t]here is no intentional or wanton deprivation of care if a genuine debate exists within the medical community about the necessity of that care." Id.; See also Spisak, 2001 U.S. Dist. Lexis 27619, at *8-9; Parker 2018 U.S. Dist. LEXIS 203356, at *3-5. Plaintiff concedes as much, and notes in the complaint that "a variety of therapeutic options can be considered. The number and type of interventions applied and the other in which these take place may differ from person to person." (Emphasis added.) (Compl., ECF No. 1 ¶ 51, PageID # 24.) And, since it is well settled that Plaintiff cannot maintain her burden of setting forth a plausible Eighth Amendment claim by simply disagreeing with her doctor's decision to provide a recognized alternative medical treatment—hormone therapy—her Eighth Amendment claim should be dismissed for failure to state a claim. Gibson, 920 F.3d at 224 ("Nor can [plaintiff] contend that [the prison] has been deliberately indifferent to his serious medical needs—particularly where [the prison] continues to treat his gender dysphoria through other means."); Dodson, 304 F. App'x at 440; Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470; Kosilek v. Spencer, 774 F.3d 63, 90 (1st Cir. 2014) (en banc). (Simply disagreeing with alternative treatment of hormone therapy insufficient to maintain Eighth Amendment claim for denial of SRS).

### 2. Treatment by Specialists Outside of the BOP

Plaintiff cannot state a plausible Eighth Amendment claim by alleging that Defendants failed to provide Plaintiff with treatment from a medical specialist of her choice. Rhinehart ex rel. Rhinehart v. Scutt, 894 F.3d 721, 740-45 (6th Cir. 2018). Because it is undisputed that Plaintiff received medical care and is simply challenging its adequacy, Plaintiff must demonstrate that the medical care that was provided was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. at 740 (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (6th Cir. 1989)). Plaintiff cannot meet this high standard because her complaint and attached exhibits detail the extensive hormone therapy and other medical treatment she has received for her Gender Dysphoria at FCI Elkton, and details the reasons why BOP's medical professionals concluded that sex reassignment surgery was not appropriate at this juncture. (Compl., ECF No. 1, ¶¶ 58-59, 71, 74, PageID # 28, 34-35; id., Attach. 7 Corrected Ex. B, PageID # 274, 332, 389, 402, 405, 410.) Simply disagreeing with the decision that Plaintiff's Gender Dysphoria can be managed by medical personnel inside the BOP is insufficient to maintain an Eighth Amendment claim, especially without any allegation of gross incompetence that shocks the conscience. Rhinehart, 894 F.3d at 740; Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470.

### 3. Searches Exclusively by Female BOP Employees

Plaintiff cannot maintain an Eighth Amendment claim on the ground that she is being searched by male correctional officers at FCI Elkton. (Compl., ECF No. 1, ¶ 88, PageID # 41-42.) The Eighth Amendment precludes cruel and unusual punishment, and a transgender inmate that identifies as a female cannot maintain an Eighth Amendment claim because she was searched by male employees. Murray, 1997 U.S. App. LEXIS 1716, at *10-13; Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470; Renee v. Neal, No. 3:18-CV-592-RLM-MGG, 2018 WL 3861610, at * 1-2 (J. Miller,

10

N.D. Ind. Aug. 13, 2018) (citing Johnson v. Phelan, 69 F.3d 144, 146 (7th Cir. 1995)).  In Renee, the court indicated that a transgender inmate that identifies as a female does not have the constitutional right to be exclusively searched by female corrections officers.  2018 WL 3861610, at * 1-2.  As the Renee court explained, "'[F]emale guards are . . . bound to see the male prisoners in states of undress.  Frequently.  Deliberately.  Otherwise they are not doing their jobs . . . [F]emale guards are entitled to participate in the normal activities of guarding, including pat-down searches of male inmates.'"  Id. (quoting Johnson, 69 F.3d at 146).  That logically applies with equal force here, and the fact that male correctional officers have searched Plaintiff at FCI Elkton, absent any allegation that the search was conducted for an improper purpose, is insufficient to maintain a viable constitutional claim. Id.

###### 4.  Additional Female Clothing and Grooming Items

Plaintiff cannot maintain an Eighth Amendment claim for failing to receive additional female clothing or female grooming items. Murray, 1997 U.S. App. LEXIS 1716, at * 7-8 (holding that a transgender inmate cannot maintain an Eighth Amendment claim for failing to receive hair and skin products or the clothing of choice). According to the Sixth Circuit in Murray, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. at *7-8.

Plaintiff cannot meet this high standard because she has been provided extensive medical and psychological treatment, has received a sports bra, and was told that she can request that additional feminine products be placed in the prison commissary for purchase. As in Murray, the failure to receive the additional clothing and cosmetic items that Plaintiff is requesting do not result in a deprivation of "the minimal civilized measure of life's necessities."  Murray, 1997 U.S. App. LEXIS 1716, at *7-8.  Therefore, Plaintiff's Eighth Amendment claim to receive these items must

also fail. Id.; Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470.

### 5. Stalls on Toilets in Recreation Department

Plaintiff cannot maintain an Eighth Amendment claim regarding the lack of stalls on two toilets inside one bathroom in the recreation area at FCI Elkton. (Compl., ECF No. 1, ¶ 87, PageID # 41; id., Attach. 7 Corrected Ex. B, PageID # 312-328.) Plaintiff concedes that all other toilets in her housing unit and other parts of FCI Elkton have stall doors and that the bathroom in the recreation area has an exterior door and a sign indicating that it is to be occupied by one inmate at a time. (Id.) Plaintiff does not dispute that the purpose of the sign is to provide privacy to inmates using the bathroom in the recreation area. (Id.) Plaintiff's objection is that other inmates occasionally violate the sign's dictates by entering the bathroom and using the second toilet, while Plaintiff is using the other toilet. (Id., Attach. 7 Corrected Ex. B, PageID # 311-12.) Plaintiff contends that her rights under the Eighth Amendment also have been violated because she is unable to lock the exterior door to provide additional privacy and security. (Id. Attach. 7 Corrected Ex. B, PageID # 314-317, 319-320.)

However, when an inmate alleges that the conditions of confinement are cruel and usual and in violation of the Eighth Amendment, the inmate must allege unnecessary and wanton infliction of pain and extreme deprivations that go beyond routine discomforts of prison life. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). In other words, "'only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" Id. at 9 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Plaintiff cannot meet these standards because her complaint and supporting materials indicate that the incidents where another inmate entered the bathroom while Plaintiff was using it were isolated and did not involve intentional or wanton behavior that denies life's necessities. (Compl., ECF No. 1, Attach. 7 Corrected Ex. B, PageID # 314-317, 319-320, 322-325, 326-327.)

The fact that prison officials have posted a sign for the bathroom to be occupied by one inmate at a time supports the notion that they are trying to protect the privacy of inmates. (Id.) The exterior door also provides privacy and, in combination with the door sign, supports the notion that prison officials did not act wantonly or cause an extreme deprivation in violation of the Eighth Amendment. (Id. Attach. 7 Corrected Ex. B, PageID # 321, 325, 328); Hudson, 503 U.S. at 9; Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470.

Moreover, Plaintiff's claim that her Eighth Amendment rights have been violated because the exterior door does not lock also lacks merit because there are valid safety and security reasons for not providing such a lock inside a penal institution. Therefore, Plaintiff does not plausibly allege the sort of wanton and intentional behavior or extreme deprivation that is necessary to maintain a viable claim. Hudson, 503 U.S. at 9; Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470.

      6.    <u>Adjustments to BOP Policies to Better Protect Privacy</u>

In Plaintiff's administrative claim, Plaintiff appears to argue that her Eighth Amendment rights have been violated because prison officials have not complied with the PREA by having male correctional officers announce their presence. (Compl., ECF No. 1, ¶¶ 107-114, PageID # 48-50; id., Attach. 7 Corrected Ex. B, PageID # 359-368.) According to Plaintiff, compliance with this aspect of PREA will lessen the isolated incidents where male correctional officers have seen her naked or not fully clothed while she is using the bathroom or taking a shower. (Id.) However, as previously stated, Plaintiff, at best, alleges isolated incidents and lacks any allegations supporting an extreme deprivation that is intentionally and wantonly designed to deprive her of life's necessities. (Id.); Hudson, 503 U.S. at 9; Rhodes v. Chapman, 452 U.S. 337, 345-47, 351-52 (1981). An internal audit attached to Plaintiff's complaint refutes her allegations, and indicates that male BOP officials do comply with the PREA and attempt to avoid instances of seeing Plaintiff nude or not fully dressed.

13

(Id., Attach. 7 Corrected Ex. B, PageID # 362, 366, 368) Any isolated failures to do so certainly are insufficient to establish the sort of extreme deprivation that is necessary to maintain a viable Eighth Amendment claim. Hudson, 503 U.S. at 9; Rhodes, 452 U.S. at 345-47, 351-52. Accordingly, Plaintiff's Eighth Amendment claim must fail. Iqbal, 556 U.S. at 678; Hill, 630 F.3d at 470.

### C. PLAINTIFF CANNOT MAINTAIN AN EIGHTH AMENDMENT CLAIM FOR MONEY DAMAGES AGAINST THE FEDERAL BUREAU OF PRISONS, THE UNITED STATES PUBLIC HEALTH SERVICE, OR FEDERAL EMPLOYEES IN THEIR OFFICIAL CAPACITIES

Plaintiff's claim for money damages against the Defendants in their official capacity for alleged violations of the Eighth Amendment must be dismissed for lack of jurisdiction because Plaintiff has not identified a waiver of sovereign immunity. A lawsuit against a federal employee in his or her official capacity is a suit against the United States. Dotson v. Wilkinson, 477 F. Supp. 2d 838, 852 (N.D. Ohio 2007). The United States, as a sovereign, is immune from suit unless it explicitly waives its immunity. Sherwood, 312 U.S. at 590-91. Congress defines the exact terms and conditions upon which the government and its agencies may be sued, and the terms of its consent define the parameters of federal court jurisdiction to entertain suits brought against the United States. Honda v. Clark, 386 U.S. 484, 501 (1967). A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied. Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (citing Lane v. Pena, 518 U.S. 187, 192 (1996)). In this case, the United States has not waived its sovereign immunity for monetary damages for a violation of the Eighth Amendment. See, e.g., Malesko, 534 U.S. at 69-71; F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994). In order to maintain a claim against individual federal employees under the Eighth Amendment for money damages, the Plaintiff must file a claim against the federal employees in their individual capacities, as opposed to their official capacities. Malesko, 534 U.S. at 72.

Plaintiff has filed suit against the BOP and the United States Public Health Services ("PHS")

14

claiming that their alleged failure to accommodate Plaintiff's Gender Dysphoria constitutes cruel and unusual punishment. (Compl., ECF No. 1, ¶¶ 9, 18, 27, 40, 69, 77, 97, 102, 111, 114, PageID # 7, 9. 12, 31-34, 37, 45, 47, 49, 50.) However, a suit against a federal agency, federal entity, or federal employee in the employee's official capacity is a suit against the United States. <u>Hawaii v. Gordon</u>, 373 U.S. 57, 58 (1963); <u>Dotson</u>, 477 F. Supp. 2d at 851-52. Since the United States has not waived its sovereign immunity for Eighth Amendment claims for money damages, Plaintiff's claims for monetary damages against the BOP, PHS, and federal employees in their official capacities should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). <u>Malesko</u>, 534 U.S. at 71-72; <u>Meyer</u>, 510 U.S. at 484-86; <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Greene</u>, 2019 WL 5395442, at *1.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

        Respectfully submitted,

        Justin Herdman,
        United States Attorney,
        Northern District Ohio

By:    s/Marlon A. Primes

        Marlon A. Primes (0043982) Asst. U.S. Attorney
        United States Courthouse
        801 West Superior Avenue, # Suite 400
        Cleveland, Ohio 44113
        Voice: 216-622-3684, Fax: 216-522-4982
        Marlon.Primes@usdoj.gov