UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TONY FISHER, aka KELLIE REHANNA, | ) ) ) | CASE NO.: 4:19-CV-1169 |
|  | ) |  |
| Plaintiff, | ) | JUDGE SARA LIOI |
|  | ) |  |
| vs. | ) ) | NOTICE OF FILING THE DEPOSITON OF TIMOTHY SMITH |
| FEDERAL BUREAU OF PRISONS, *et al.,* | ) ) ) |  |
|  | ) |  |
| Defendants. |  |  |

Plaintiff, Tony Fisher, aka Kellie Rehanna, by and through counsel, hereby notifies this Court and Defendants that the deposition of Timothy Smith that was taken on July 29, 2021 (attached hereto) has been filed in this case.

Respectfully submitted,

*/s/Edward A. Icove*
Edward A. Icove (0019646)
Icove Legal Group, Ltd.
Terminal Tower, Ste. 3220
50 Public Square
Phone (216) 802-0000; Fax (216) 802-0002
ed@icovelegal.com
Attorney for Plaintiff Tony Fisher,
aka Kellie Rehanna

## CERTIFICATE OF SERVICE

On August 27, 2021, this document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this through the Court's system.

*/s/ Edward A. Icove*
Edward A. Icove

1

```
 1              THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF OHIO
 2                     EASTERN DIVISION

 3                        - - -

 4   Tony Fisher, aka          )
     Kellie Rehanna,           )
 5                             )
                  Plaintiff,   )
 6                             )
          vs.                  )   Case No. 4:19CV1169
 7                             )   Sara Lioi, J.
     Federal Bureau of         )
 8   Prisons, et al.,          )
                               )
 9                Defendants.  )

10                        - - -

11        Deposition of Timothy Smith, a witness herein,

12   called on behalf of the plaintiff for oral

13   examination, pursuant to the Federal Rules of Civil

14   Procedure, taken before Karen A. Toth, Notary Public

15   in and for the State of Ohio, via Zoom, on Thursday,

16   July 29, 2021, commencing at 8:58 a.m.

17                        - - -

18

19

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2   On behalf of the Plaintiff:

 3          Ed Icove, Esq.
            Icove Legal Group LTD
 4          Terminal Tower
            500 Public Square, Suite 3320
 5          Cleveland, Ohio 44113
            216-802-0000
 6
     On behalf of the Defendants:
 7
            Joshua Gardner, Esq.
 8          Gary Feldon, Esq.
            Joshua Kolsky, Esq.
 9          United States Department of Justice
            Civil Division, Federal Programs Branch
10          1100 L Street NW
            Room 11502
11          Washington, D.C. 20005
            202-305-7583
12

13                         - - -

14   Also present:

15          Kellie Rehanna

16                         - - -

17

18

19

20

21

22

23

24

25
```

```
 1                          INDEX
 2   WITNESS:                          CROSS
 3   Timothy Smith
 4        by Mr. Icove                    4
 5                        - - -
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        TIMOTHY SMITH
 2    Of lawful age, being first duly sworn, as
 3    hereinafter certified, was examined and testified as
 4    follows:
 5                      CROSS-EXAMINATION
 6    By Mr. Icove:
 7    Q    Good morning, Lieutenant.  My name is Ed Icove
 8         and we're here today on the deposition of Tony
 9         Fisher versus Federal Bureau of Prisons, et
10         al., case number 19-CV-1169.  It's presently
11         pending in the United States District Court,
12         Northern District of Ohio, Eastern Division.
13         Today's date is July 29, 2021 and we're taking
14         this particular deposition pursuant to
15         agreement of counsel and Rule 30(b)(6).
16               Lieutenant, can you hear my voice okay?
17    A    I can, sir.
18    Q    Okay.  If you have a problem hearing me or if
19         you have any problems with my questions, you
20         know you can ask me to rephrase it or to state
21         the question again; is that fair?
22    A    Yes, sir.
23    Q    You're aware that your testimony is the same
24         as if it were in court except there is no
25         judge present?
```

```
 1   A     Yes, sir.
 2   Q     And your counsel may object to a question.
 3         Since there is no judge present any objection
 4         will be considered, if necessary, by the court
 5         at a later date.  Is that fair with you?
 6   A     Yes, sir.
 7   Q     if your counsel objects you still must answer
 8         the question to the best of your ability
 9         unless he instructs you otherwise.
10   A     Understood.
11   Q     Could you briefly provide me with your
12         employment history at the BOP?
13   A     Began at the BOP in 2004, December, here at
14         FCI Elkton.  In February of 2011 -- I started
15         here as an officer.  In February of 2011 I
16         transferred to FCI Mendota to activate that
17         facility as a correctional systems officer.  I
18         came back to FCI Elkton in July of 2014 as a
19         GS-9 lieutenant.  And then in June of 2016 I
20         was promoted to GS-11 lieutenant here at FCI
21         Elkton.
22   Q     Congratulations.
23              What documents do you recall reviewing
24         in preparation for today's deposition?
25   A     I reviewed the transgender offender manual.  I
```

```
 1          reviewed the inmate personal property policy,

 2          and I reviewed the plaintiff's amended Rule

 3          30(b)(6) notice of deposition to defendants,

 4          specifically Question No. 8.

 5   Q      Thank you.  What is the inmates personal

 6          property policy?

 7   A      That is program statement 5580.08.

 8   Q      Can you look at what his previously been

 9          marked as Plaintiff's Exhibit 2 please?  And

10          specifically why don't you look at page 11,

11          paragraph 12.

12   A      Okay.

13   Q      Is it fair to say that this particular

14          paragraph provides the procedure for the

15          determination of Kellie's request for an

16          exemption so that she would only be patted

17          down by a female correction officer?

18   A      Can you rephrase or restate the question?

19   Q      Is it fair to say that this particular

20          paragraph provides the procedure for

21          determination of Kellie's exemption request

22          for being patted down by a female correction

23          officer?

24   A      I would agree it states that transgender

25          inmates may request an exception.  Exception
```

```
 1          must be preauthorized by the warden.
 2   Q     And is that the procedure by which Kellie's
 3          exemption request would be reviewed?
 4                   MR. GARDNER:     Objection.  Vague.
 5   A     I'm sorry?
 6   Q     You didn't hear my question?  I'm sorry.
 7                   MR. GARDNER:     No, no.  I think he
 8          didn't hear my objection.  I said objection.
 9          Vague.
10   Q     Okay.  Is this the procedure that would be
11          used in reviewing Kellie's request for being
12          patted down by a female correction officer?
13   A     To my understanding this would be for any
14          transgender requesting exception to the pat
15          search and requesting that through the warden.
16   Q     Is it fair to say that the exemption is in the
17          warden's discretion?
18   A     The warden's discretion along with
19          constitution from the necessary personnel
20          listed in page 11.
21   Q     Anything else?
22                   MR. GARDNER:     Objection.  Vague.
23   Q     Are you aware of Kellie's first request for an
24          exemption?
25                   MR. GARDNER:     Objection.  Beyond
```

```
 1          the scope of the Rule 30(b)(6) deposition.
 2    Q     You need to go ahead and answer the question
 3          to the best of your ability.
 4    A     I became aware of the plaintiff's previous
 5          request for exception for pat search through
 6          the previous warden in 2017.  It was denied.
 7    Q     And what was the previous warden's name?
 8    A     Steven Merlak.
 9    Q     Can you look at Exhibit 8 please for a second?
10          Is this one of the documents that you had an
11          opportunity to review prior to this
12          deposition?
13    A     You have to stand by for a minute.  I do not
14          have that in front of me.  I might have it on
15          my email.
16                THE WITNESS:     Sir, do you know if
17          that email was also sent to Paul Clifford with
18          the exhibit in it?
19                MR. GARDNER:     No, it's what I sent
20          to you yesterday when we received it from
21          plaintiff's counsel.  Do you want me to resend
22          it to you?
23                THE WITNESS:     I'm actually on
24          Dr. Clifford's account right now since he's
25          right after me.  Can you send him an email and
```

```
 1         I can pull it up from there?
 2              MR. GARDNER:      I think I can do
 3         that.
 4    A     I apologize.
 5    Q     Not a problem.
 6    A     It would be easier for him to log in than me.
 7              MR. GARDNER:      We actually need to
 8         take a very brief pause.  I need to go to my
 9         work computer which is just down the hall.
10              MR. ICOVE:        Let's take a break.
11                   (Short recess.)
12              MR. ICOVE:        Back on the record.
13    By Mr. Icove:
14    Q     Lieutenant, did you have an opportunity to
15         look at this particular document prior to the
16         deposition?
17    A     I just received Exhibit 8.  I did receive it
18         the other day.  I was told I was potentially
19         more on Exhibit 2, so I did not thoroughly go
20         through Exhibit 8 prior to today.
21    Q     Is it fair to say that this is a copy of the
22         grievance and denial of Kellie's request to
23         Merlak which was made prior to the granting of
24         the exception in this case?
25              MR. GARDNER:      Objection.  Beyond
```

```
 1          the scope of the Rule 30(b)(6).  Lack of
 2          foundation.
 3   Q      Lieutenant, you need to answer the questions.
 4          As I indicated, counsel is going to make
 5          objections.
 6   A      So this appears to be a prior request.  As far
 7          as its authenticity and when it was requested,
 8          I can only go by what's presented to me.
 9   Q      Do you have any question as to the
10          authenticity of that document?
11   A      I do not at this time.
12   Q      Can you tell from the document the reason for
13          the denial?
14                MR. GARDNER:      Objection.  Beyond
15          the scope of the Rule 30(b)(6).  Lack of
16          foundation.
17                MR. ICOVE:        We will stipulate for
18          the record your objections to this line of
19          questioning.  Thank you.
20   A      So can you repeat the question for me?
21   Q      Yes.  What was the reason for denial, based
22          upon Exhibit 8?
23   A      Let me find the original request.  On the
24          informal resolution form I don't see a reason
25          other than the fact that he was -- his
```

1          previous prior request had been denied.

2                  Moving up from there, the request for

3          administrative remedy states, "Your exception

4          request has already been denied pursuant to

5          these program statements listed above.  Based

6          on these findings, this response for your

7          request for administrative remedy is denied."

8                  His individualized circumstances and

9          consultation with the appropriate departments,

10         the warden denied your exemption.

11    Q    Does it say in this particular document the

12         reason for the warden's denial?

13    A    I don't think I see a reason as to why it was

14         denied other than the fact that it was just

15         denied.

16    Q    Thank you.

17                 Are you personally aware of any other

18         reasons or reason that the prior request was

19         denied?

20    A    I have no knowledge of this prior request

21         except -- until about two days ago.

22    Q    Okay.  Who is the current warden?

23    A    That would be Mark K. Williams.  And he

24         actually retires I believe tomorrow.

25    Q    Are you aware that on or about May 11, 2021 he

```
 1           granted Kellie's request for a transgender
 2           exception to the pat down?
 3    A      I'm aware of that, yes.
 4    Q      How was that particular request initiated?
 5    A      I believe it was brought up in the context of
 6           litigation by the attorneys through the
 7           regional office who in turn reached out to the
 8           administrative staff here at FCI Elkton in
 9           around May of 2021.
10    Q      So the people that would have been involved
11           would have been the warden, the administrative
12           staff and your counsel?
13    A      I'm sorry, what was the question, sir?
14    Q      Is it fair to say that the initiation was done
15           by the administrative staff, your attorney and
16           by the warden?
17    A      To my knowledge, that's how it was initiated,
18           yes, through the counsel, through the regional
19           office, through the administrative staff here
20           at FCI Elkton.
21    Q      So if I understand you correctly, the
22           particular request was, to the best of your
23           knowledge, initiated by litigation counsel?
24    A      Correct.
25    Q      And then discussed by the administrative
```

```
 1        staff?
 2   A    I would imagine it was discussed between them,
 3        yes.
 4   Q    And to the best of your knowledge it was
 5        discussed between them and then it was
 6        granted?
 7   A    Yes, sir.
 8   Q    Is it fair to say that this particular request
 9        in May of 2021 wasn't initiated by Kellie?
10        And when I refer to Kellie -- I'm sorry I
11        didn't mention this to you -- I refer to her
12        as -- her prior name is Tony Fisher, aka
13        Kellie Rehanna, so I refer to her as Kellie.
14               So is it fair to say that this
15        particular request wasn't initiated by Kellie?
16   A    My understanding, yes.  Fair to say.
17   Q    Okay.  And in regards to Item 8, it states,
18        "Why it took until May 17, 2021 for
19        Plaintiff's request for transgender exception
20        to pat down" -- "to pat search be granted."
21        Is there anything you know that's in writing
22        that relates to that particular action?
23   A    To the granting of it in May?
24   Q    Yes.
25   A    Once it was granted I was informed that it was
```

```
 1              granted.  The entry was made on posted picture
 2              file to inform the staff at FCI Elkton.  I
 3              also believe there was a memo created as well
 4              notifying the staff at FCI Elkton.
 5    Q    And is the memo the only thing that you're
 6              aware of that's in writing?
 7    A    Other than, you know, the posted picture file
 8              entry I guess would be in writing, you can
 9              print it out.  It's electronic format.  But
10              yes.
11    Q    And is it your recollection that the writing
12              is very short and it just says that the
13              particular request has been granted?
14    A    I don't remember exactly what the verbiage is
15              on it, but something along the lines that
16              Inmate Fisher has been approved for exception
17              to pat search by female staff.
18    Q    Did you ever see that particular document?
19    A    I may have.  I don't recall at this time.
20    Q    Was any reason stated on that particular
21              document; to the best of your knowledge?
22    A    Of why it was approved?
23    Q    Right.
24    A    I don't -- to my knowledge, I don't recall if
25              there was a reason why it was approved, just
```

```
 1        that it was approved.
 2   Q    Have you seen the documents or document that
 3        indicate why it was approved?
 4   A    I don't believe I've seen any documents
 5        stating why it was approved.
 6   Q    Are you personally aware of the reason why it
 7        was approved?
 8   A    I'm not.
 9   Q    Are you aware of why it took until May 17,
10        2021 for it to be approved?
11   A    I became aware of it, again, at the -- Inmate
12        Fisher requested it in 2017, and it was
13        previously denied.  And it wasn't until May of
14        2021 that the current administration became
15        aware of it through the context of litigation,
16        and then it was properly addressed and
17        approved at that time.
18   Q    So is it fair so say that it was approved
19        because of this litigation?
20             MR. GARDNER:      Objection.
21        Mischaracterizes the witness's previous
22        testimony.
23   Q    Did you understand my question?
24   A    Can you repeat the question?
25   Q    Yeah.  Was this particular request, to the
```

```
 1          best of your knowledge, approved because of
 2          this particular litigation?
 3                 MR. GARDNER:      Same objection.
 4   A     Do I need to answer that?
 5                 MR. GARDNER:      Yes.
 6   Q     Yeah, you do.
 7   A     Okay.
 8   Q     Yeah.
 9   A     I'm not aware of whether it was because of
10          litigation or because it was the decision made
11          by the warden at the time.  I can't answer
12          that question on why it was approved by the
13          current administration; if it was a result of
14          the current litigation or a decision that he
15          made regardless of the litigation.
16   Q     Okay.  I'm struggling a little bit with the
17          answer because you're here today to explain to
18          us why it took until May 17, 2021 for
19          plaintiff's request for transgender exception
20          to pat down to be granted.  So could you lay
21          out for me why it took all that time?
22                 MR. GARDNER:      Objection.  Asked and
23          answered.
24   Q     You need to answer the question.
25   A     I became aware of the plaintiff's prior
```

1      request for the exception to pat search was

2      originally denied in 2017.  It wasn't until

3      May of 2021 that the current administration

4      became aware of it through legal and the

5      context of litigation was when it was brought

6      to their attention in May, and it was

7      addressed and approved in May of 2021.  So

8      prior to May of 2021 the current

9      administration, to my knowledge, would not

10     have known about the previous request under a

11     different administration.

12  Q   And the request was then initiated in part by

13     the current administration; is that fair to

14     say?

15  A   Can you repeat that question?

16  Q   Yeah.  The current request that was granted on

17     May 17, 2021 was initiated in part because of

18     the change of administration?

19  A   I'm not aware of any new request, just the

20     original request in 2017.

21  Q   Okay.  So the original request was denied.

22     Was it reconsidered by the current

23     administration?

24  A   It was reconsidered by the current

25     administration when it was brought to their

```
 1          attention in May of 2021 through the regional
 2          office or -- yes, the regional office via the
 3          attorneys on the case through the context of
 4          litigation.
 5   Q   When did the current warden take over from the
 6          prior warden approximately?
 7   A   I want to say maybe late -- mid to late 2018.
 8          I'm not 100 percent sure of when.
 9   Q   But it was in 2018 sometime?
10   A   It could have been 2018, early 2019.
11   Q   So it's fair to say that the current warden
12          could have reconsidered that particular
13          request any time from when he took over until
14          it was granted on May 17, 2021?
15              MR. GARDNER:     Objection.  Calls for
16          speculation.
17   A   I don't think I can fairly answer that
18          question.  It wasn't brought to his attention
19          until May of 2021.  If he didn't know about it
20          prior to that then he couldn't have
21          reconsidered it.
22   Q   To the best of your knowledge and belief, did
23          he have any knowledge of this particular
24          request while he was the warden at Elkton?
25   A   Prior to May 2021, I don't have knowledge if
```

```
1          he did or did not or was aware of it prior to
2          May.
3   Q    Were you aware of it?
4   A    I was not.
5   Q    So in a nutshell, the reason why it took until
6          May 17, 2021 for her request for exemption to
7          be granted is because it wasn't brought to the
8          attention of the current warden; is that fair?
9   A    To my knowledge that is when they became aware
10         of it, yes, May of 2021.
11  Q    And that's why it took so long.  As soon as he
12         became aware of it he decided to grant it?
13  A    When he became aware of it it was addressed
14         and then approved within days, yes.
15  Q    Would you -- I got two other questions for
16         you.  If you'd be kind enough to look at page
17         11 again of the Exhibit 2.
18  A    Okay.
19  Q    It's paragraph 12.  And just a couple
20         follow-up questions.  In this particular
21         paragraph it says that inmates who are granted
22         the exception may have it reversed by the
23         warden if it's found to have institutional
24         rules of contraband.  For example, if the
25         warden finds that there was a violation of
```

20

```
 1          institutional rules concerning contraband he
 2          or she could revoke that exception; is that
 3          your understanding?
 4   A      Yes --
 5               MR. GARDNER:      Object to form.
 6   A      -- if it is found --
 7               MR. GARDNER:      You can answer,
 8          please.
 9   Q      Please, go ahead.
10   A      If the inmate is found to violate the
11          institutional rules concerning contraband the
12          warden could reverse the decision for the
13          exception to pat search.
14   Q      Is there a formal finding process that has to
15          be gone through for that, or is it just
16          something that, for example, if you reported
17          that an inmate had a razor blade, that would
18          be considered contraband; is that correct?
19   A      If I just say the inmate had a razor blade, or
20          is the inmate found in possession of the razor
21          blade?
22   Q      Let's say the inmate was found in possession
23          of the razor blade.  Would that be considered
24          contraband?
25   A      Yes, if he was found in possession of the
```

```
 1          altered razor blade and not just a razor blade
 2          for shaving,  then yes, that could be
 3          considered contraband.
 4    Q     So a razor blade for shaving is okay?
 5    A     If it's in its original state, yes.
 6    Q     Is there any formal hearing process that this
 7          goes before before the warden makes that
 8          determination of revoking the exception?
 9    A     Depending on the nature of the contraband,
10          yes, there is a procedure.
11    Q     Is aspirin considered to be a contraband?
12    A     Could be if it's not in its original packaging
13          or contents, it could be considered
14          contraband.
15    Q     On the other hand, if it's in the original
16          packaging it's okay?
17    A     I would agree with that.
18    Q     Band-Aides.  If you have a Band-Aid and it's
19          in the original packaging would it be
20          considered to be contraband?
21    A     No.
22    Q     What are the general rules regarding
23          contraband?
24    A     What are the general rules --
25                MR. GARDNER:    Objection.  Beyond
```

1          the scope of the 30(b)(6).

2    Q     What are the rules?  What is considered

3          contraband and what is not considered

4          contraband?

5    A     Well, there are two types of contraband:

6          There is hard contraband which is any item

7          which poses a serious threat to the security

8          of the institution which ordinarily is not

9          approved for possession by an inmate or for

10         admission into the institution.  Examples of

11         hard contraband include weapons, intoxicants,

12         tools which could aid in escape, ammunition of

13         explosive, combustibles, flammables, knives or

14         tools not provided in accordance with the

15         program statement of the correctional services

16         manual, hazardous or poisonous chemicals or

17         gases.  Nicotine or other controlled

18         substances is considered hard contraband,

19         medicine dispensed by health services are

20         approved as hard contraband if not possessed

21         by the inmate for whom it is prescribed; if

22         not consumed or used in the manner prescribed.

23              Nuisance contraband is considered any

24         item other than hard contraband, which has

25         never been authorized, or which may be, or

1       which previously had been authorized for

2       possession, but whose possession is prohibited

3       when it presents a threat to security or its

4       condition or excessive quantities of it

5       presents health, fire or housekeeping hazard.

6       Nuisance contraband can included personal

7       property no longer permitted for admission, or

8       permitted for sale in the commissary; altered

9       personal property; excessive accumulation of

10      commissary, newspapers, letters or magazines

11      which cannot be stored neatly and safely in

12      the designated area; food items which are

13      spoiled or retained beyond the point of safe

14      consumption; government-issued items which

15      have been altered, or other items made from

16      government property without staff

17      authorization.

18  Q   It appears to me that you were reading from

19      something.  Can you identify that document for

20      us please?

21  A   That is the inmate personal property policy,

22      5580.08, and that is on pages 8 and 9 of that

23      policy statement under contraband.

24  Q   Does that particular policy statement, which I

25      don't have a copy of in front of me, does it

24

```
1              provide for the appeal process if the warden
2              is considering revoking an exemption under
3              this particular rule?
4     A        I think I understand your question.  So if the
5              inmate is found to be in possession of
6              contraband we receive an incident report and
7              then there is a process for that.  The inmate
8              could always appeal the result of that
9              incident report.  If it's upheld I imagine it
10             could be utilized to revoke the inmate's
11             exception to pat search if he's found to be
12             guilty of violating those rules.
13    Q        As a part of that particular process does the
14             inmate have an opportunity to talk to someone
15             personally or is it all on paper?
16    A        Yes, he will have an opportunity to be
17             interviewed regarding the incident report and
18             provided his rights prior to being questioned.
19             He has a right to make any statements on his
20             behalf or present evidence, present witnesses
21             on his behalf.
22    Q        When you say that the inmate is provided his
23             rights, what rights are you taking about, due
24             process rights, or are you talking about some
25             other kind of rights?
```

1   A     Due process rights.

2   Q     And your understanding is -- what does that

3         mean?

4   A     Well, when he receives an incident report a

5         lieutenant will investigate the incident

6         report.  Prior to questioning by a lieutenant

7         you'll be given the rights that he has the

8         right to remain silent at all stages of the

9         disciplinary process.  His silence may be used

10        to draw and adverse inference at any stage of

11        the disciplinary process.  His silence alone

12        may not be used to support a finding that he

13        committed a prohibitive act.

14              THE NOTARY:       I'm sorry.  His

15        silence may not be --

16              THE WITNESS:       Would you like me to

17        do that all over again?

18              THE NOTARY:       No, you don't need to

19        do it all over again.

20              THE WITNESS:       I don't --

21              THE NOTARY:       Oh, you have it

22        memorized.

23              THE WITNESS:       I do.

24              He has the right to remain silent at

25        all stages of the disciplinary process.  So

```
 1        now you --
 2              THE NOTARY:       I'm sorry.
 3              THE WITNESS:      That's alright.
 4              MR. GARDNER:      I think, Lieutenant
 5        Smith, you were talking about how the silence
 6        cannot be used against them.
 7    A   Silence may be used to draw an adverse
 8        inference against him, but a silence alone may
 9        not be used to support a finding that he
10        committed a prohibited act.
11    Q    Thank you.
12              MR. ICOVE:        For the record, Josh,
13        I'd ask that you be kind enough to provide me
14        with a copy of that particular document that
15        he's been reading from.
16              MR. GARDNER:      I can do that, Ed,
17        but you can also pull it up from the website.
18        That's what I did.
19              MR. ICOVE:        Great.
20              MR. GARDNER:      I'm happy to email
21        you what I pulled from the Internet as well.
22              MR. ICOVE:        I appreciate it very
23        much.  Thank you.
24    Q    One other question.  The rule also provides on
25        a pat search that in exigent circumstances a
```

```
 1            staff member may conduct a pat search of any
 2            inmate consistent with the program statement,
 3            and that also under that circumstance the
 4            person could lose his or her exemption.  What
 5            would be that type of a circumstance?
 6                    MR. GARDNER:        Objection.
 7            Mischaracterizes the document.
 8    Q    Well, let's go back to the document.  Are you
 9            aware that the exemption can be re -- can be
10            reversed if the person has been in a situation
11            where there is an exigent circumstance?
12            E-x-i-g-e-n-t.
13                    MR. GARDNER:        Objection.
14            Mischaracterizes the document.
15    Q    Go ahead.  Do you understand the question?
16    A    I think the question is wrong.  He doesn't
17            lose his exception to pat search, however in
18            an exigent circumstance any staff member may
19            conduct the pat search of the inmate
20            consistent with the program statement,
21            searches of housing units, inmates and inmate
22            work areas.
23    Q    Okay.  And what is that type of a circumstance
24            is my question?
25    A    I would say it's anything out of the ordinary
```

| | | |
|---|---|---|
| 1 | | running of the institution. |
| 2 | Q | That's pretty broad for me as a lay person. |
| 3 | | You got to tell me what that means.  Is it |
| 4 | | defined in any particular document that you're |
| 5 | | aware of? |
| 6 | A | Well, exigent would be requiring immediate |
| 7 | | attention or immediate circumstances.  So I |
| 8 | | would say it's anything out of the ordinary |
| 9 | | running of the institution. |
| 10 | Q | Okay.  And what's anything out of the ordinary |
| 11 | | of running the institution?  I need some |
| 12 | | explanation as to what that means. |
| 13 | A | Could be a fight, could be a disturbance, |
| 14 | | could be a riot, could be hunger strikes, food |
| 15 | | strikes.  Anything that disturbs the ordinary |
| 16 | | operation of the institution. |
| 17 | Q | Thank you very much, Lieutenant.  I don't have |
| 18 | | any further questions for you today. |
| 19 | | MR. GARDNER:     Lieutenant Smith will |
| 20 | | read and sign the deposition transcript. |
| 21 | | (Deposition concluded at 9:37 a.m.) |
| 22 | | (Signature not waived.) |
| 23 | | - - - |
| 24 | | |
| 25 | | |

29

```
 1                        SIGNATURE PAGE

 2   Case Name:     Tony Fisher, etc. vs. Federal Bureau
                      of Prisons, et al.
 3

 4   Case Number:   4:19CV1169

 5   Deponent:      Timothy Smith

 6   Date:          Thursday, July 29, 2021

 7

 8   To the Reporter:

 9          I have read the entire transcript of my

10   Deposition taken in the captioned matter or the same

11   has been read to me.  I request that the following

12   changes be entered upon the record for the reasons

13   indicated.

14          I have signed my name to the Errata Sheet and

15   the appropriate Certificate and authorize you to

16   attach both to the original transcript.

17

18

19   _____
     Timothy Smith
20
            Subscribed and sworn to before me this
21
     _____day of _____, 2021.
22

23

24   _____
                          Notary Public
25   My commission expires:_____.
```



1    I have read the foregoing transcript from page 1

2    through page 28 and note the following corrections:

3    PAGE-LINE      REQUESTED CHANGE      REASON FOR CHANGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Timothy Smith                    [Date]

```
1   State of Ohio,          )
                            )  SS:   CERTIFICATE
2   County of Cuyahoga,     )

3        I, Karen A. Toth, Notary Public in and for the

4   State of Ohio, duly commissioned and qualified, do

5   hereby certify that the within named witness,

6   Timothy Smith, was by me first duly sworn to

7   testify the truth, the whole truth, and nothing but

8   the truth in the cause aforesaid; that the testimony

9   then given by him was by me reduced to

10  stenotypy/computer in the presence of said witness,

11  afterward transcribed, and that the foregoing is a

12  true and correct transcript of the testimony so

13  given by him as aforesaid.

14       I do further certify that this deposition was

15  taken at the time and place in the foregoing caption

16  specified and was completed without adjournment

17       I do further certify that I am not a relative,

18  counsel, or attorney of either party, or otherwise

19  interested in the event of this action.

20       IN WITNESS WHEREOF, I have hereunto set my

21  hand and affixed my seal of office at Cleveland,

22  Ohio on this 9th day of August, 2021.

23

24       Karen A. Toth, Notary Public in
         and for the State of Ohio.
25       My Commission expires May 6, 2023.
```

FINCUN-MANCINI -- THE COURT REPORTERS
(216)696-2272

Case: 4:19-cv-01169-SL  Doc #: 58  Filed:  08/27/21  34 of 39.  PageID #: 956

Tony Fisher, aka Kellie Rehanna vs.
Federal Bureau of Prisons, et al.

Timothy Smith
July 29, 2021

## A

**ability (2)**
5:8;8:3
**above (1)**
11:5
**accordance (1)**
22:14
**account (1)**
8:24
**accumulation (1)**
23:9
**act (2)**
25:13;26:10
**action (1)**
13:22
**activate (1)**
5:16
**actually (3)**
8:23;9:7;11:24
**addressed (3)**
15:16;17:7;19:13
**administration (9)**
15:14;16:13;17:3,
9,11,13,18,23,25
**administrative (7)**
11:3,7;12:8,11,15,
19,25
**admission (2)**
22:10;23:7
**adverse (2)**
25:10;26:7
**again (5)**
4:21;15:11;19:17;
25:17,19
**against (2)**
26:6,8
**age (1)**
4:2
**ago (1)**
11:21
**agree (2)**
6:24;21:17
**agreement (1)**
4:15
**ahead (3)**
8:2;20:9;27:15
**aid (1)**
22:12
**aka (1)**
13:12
**al (1)**
4:10
**alone (2)**
25:11;26:8
**along (2)**
7:18;14:15
**alright (1)**
26:3
**altered (3)**
21:1;23:8,15
**always (1)**

24:8
**amended (1)**
6:2
**ammunition (1)**
22:12
**answered (1)**
16:23
**apologize (1)**
9:4
**appeal (2)**
24:1,8
**appears (2)**
10:6;23:18
**appreciate (1)**
26:22
**appropriate (1)**
11:9
**approved (16)**
14:16,22,25;15:1,3,
5,7,10,17,18;16:1,12;
17:7;19:14;22:9,20
**approximately (1)**
18:6
**area (1)**
23:12
**areas (1)**
27:22
**around (1)**
12:9
**aspirin (1)**
21:11
**attention (5)**
17:6;18:1,18;19:8;
28:7
**attorney (1)**
12:15
**attorneys (2)**
12:6;18:3
**authenticity (2)**
10:7,10
**authorization (1)**
23:17
**authorized (2)**
22:25;23:1
**aware (22)**
4:23;7:23;8:4;
11:17,25;12:3;14:6;
15:6,9,11,15;16:9,25;
17:4,19;19:1,3,9,12,
13;27:9;28:5

## B

**back (3)**
5:18;9:12;27:8
**Band-Aid (1)**
21:18
**Band-Aides (1)**
21:18
**based (2)**
10:21;11:5
**became (8)**
8:4;15:11,14;

16:25;17:4;19:9,12,
13
**Began (1)**
5:13
**behalf (2)**
24:20,21
**belief (1)**
18:22
**best (7)**
5:8;8:3;12:22;
13:4;14:21;16:1;
18:22
**Beyond (5)**
7:25;9:25;10:14;
21:25;23:13
**bit (1)**
16:16
**blade (7)**
20:17,19,21,23;
21:1,1,4
**BOP (2)**
5:12,13
**break (1)**
9:10
**brief (1)**
9:8
**briefly (1)**
5:11
**broad (1)**
28:2
**brought (5)**
12:5;17:5,25;
18:18;19:7
**Bureau (1)**
4:9

## C

**Calls (1)**
18:15
**came (1)**
5:18
**can (23)**
4:16,17,20;6:8,18;
8:9,25;9:1,2;10:8,12,
20;14:8;15:24;17:15;
18:17;20:7;23:6,19;
26:16,17;27:9,9
**case (3)**
4:10;9:24;18:3
**certified (1)**
4:3
**change (1)**
17:18
**chemicals (1)**
22:16
**circumstance (5)**
27:3,5,11,18,23
**circumstances (3)**
11:8;26:25;28:7
**Clifford (1)**
8:17
**Clifford's (1)**

8:24
**combustibles (1)**
22:13
**commissary (2)**
23:8,10
**committed (2)**
25:13;26:10
**computer (1)**
9:9
**concerning (2)**
20:1,11
**concluded (1)**
28:21
**condition (1)**
23:4
**conduct (2)**
27:1,19
**Congratulations (1)**
5:22
**considered (11)**
5:4;20:18,23;21:3,
11,13,20;22:2,3,18,
23
**considering (1)**
24:2
**consistent (2)**
27:2,20
**constitution (1)**
7:19
**consultation (1)**
11:9
**consumed (1)**
22:22
**consumption (1)**
23:14
**contents (1)**
21:13
**context (4)**
12:5;15:15;17:5;
18:3
**contraband (23)**
19:24;20:1,11,18,
24;21:3,9,11,14,20,
23;22:3,4,5,6,11,18,
20,23,24;23:6,23;
24:6
**controlled (1)**
22:17
**copy (3)**
9:21;23:25;26:14
**correction (3)**
6:17,22;7:12
**correctional (2)**
5:17;22:15
**correctly (1)**
12:21
**counsel (8)**
4:15;5:2,7;8:21;
10:4;12:12,18,23
**couple (1)**
19:19
**Court (3)**
4:11,24;5:4

**created (1)**
14:3
CROSS-EXAMINATION (1)
4:5
**current (13)**
11:22;15:14;16:13,
14;17:3,8,13,16,22,
24;18:5,11;19:8

## D

**date (2)**
4:13;5:5
**day (1)**
9:18
**days (2)**
11:21;19:14
**December (1)**
5:13
**decided (1)**
19:12
**decision (3)**
16:10,14;20:12
**defendants (1)**
6:3
**defined (1)**
28:4
**denial (4)**
9:22;10:13,21;
11:12
**denied (11)**
8:6;11:1,4,7,10,14,
15,19;15:13;17:2,21
**departments (1)**
11:9
**Depending (1)**
21:9
**deposition (9)**
4:8,14;5:24;6:3;
8:1,12;9:16;28:20,21
**designated (1)**
23:12
**determination (3)**
6:15,21;21:8
**different (1)**
17:11
**disciplinary (3)**
25:9,11,25
**discretion (2)**
7:17,18
**discussed (3)**
12:25;13:2,5
**dispensed (1)**
22:19
**District (2)**
4:11,12
**disturbance (1)**
28:13
**disturbs (1)**
28:15
**Division (1)**
4:12
**document (13)**

Case: 4:19-cv-01169-SL  Doc #: 58  Filed:  08/27/21  35 of 39.  PageID #: 957

Tony Fisher, aka Kellie Rehanna vs.
Federal Bureau of Prisons, et al.

Timothy Smith
July 29, 2021

9:15;10:10,12;
11:11;14:18,21;15:2;
23:19;26:14;27:7,8,
14;28:4
**documents (4)**
5:23;8:10;15:2,4
**done (1)**
12:14
**down (7)**
6:17,22;7:12;9:9;
12:2;13:20;16:20
**Dr (1)**
8:24
**draw (2)**
25:10;26:7
**due (2)**
24:23;25:1
**duly (1)**
4:2

**E**

**early (1)**
18:10
**easier (1)**
9:6
**Eastern (1)**
4:12
**Ed (2)**
4:7;26:16
**electronic (1)**
14:9
**Elkton (8)**
5:14,18,21;12:8,
20;14:2,4;18:24
**else (1)**
7:21
**email (4)**
8:15,17,25;26:20
**employment (1)**
5:12
**enough (2)**
19:16;26:13
**entry (2)**
14:1,8
**escape (1)**
22:12
**et (1)**
4:9
**evidence (1)**
24:20
**exactly (1)**
14:14
**examined (1)**
4:3
**example (2)**
19:24;20:16
**Examples (1)**
22:10
**except (2)**
4:24;11:21
**Exception (17)**
6:25,25;7:14;8:5;

9:24;11:3;12:2;
13:19;14:16;16:19;
17:1;19:22;20:2,13;
21:8;24:11;27:17
**excessive (2)**
23:4,9
**exemption (10)**
6:16,21;7:3,16,24;
11:10;19:6;24:2;
27:4,9
**Exhibit (8)**
6:9;8:9,18;9:17,19,
20;10:22;19:17
**exigent (4)**
26:25;27:11,18;
28:6
**E-x-i-g-e-n-t (1)**
27:12
**explain (1)**
16:17
**explanation (1)**
28:12
**explosive (1)**
22:13

**F**

**facility (1)**
5:17
**fact (2)**
10:25;11:14
**fair (14)**
4:21;5:5;6:13,19;
7:16;9:21;12:14;
13:8,14,16;15:18;
17:13;18:11;19:8
**fairly (1)**
18:17
**far (1)**
10:6
**FCI (8)**
5:14,16,18,20;12:8,
20;14:2,4
**February (2)**
5:14,15
**Federal (1)**
4:9
**female (4)**
6:17,22;7:12;14:17
**fight (1)**
28:13
**file (2)**
14:2,7
**find (1)**
10:23
**finding (1)**
20:14;25:12;26:9
**findings (1)**
11:6
**finds (1)**
19:25
**fire (1)**
23:5

**first (2)**
4:2;7:23
**Fisher (4)**
4:9;13:12;14:16;
15:12
**flammables (1)**
22:13
**follows (1)**
4:4
**follow-up (1)**
19:20
**food (2)**
23:12;28:14
**form (2)**
10:24;20:5
**formal (2)**
20:14;21:6
**format (1)**
14:9
**found (8)**
19:23;20:6,10,20,
22,25;24:5,11
**foundation (2)**
10:2,16
**front (2)**
8:14;23:25
**further (1)**
28:18

**G**

**GARDNER (23)**
7:4,7,22,25;8:19;
9:2,7,25;10:14;
15:20;16:3,5,22;
18:15;20:5,7;21:25;
26:4,16,20;27:6,13;
28:19
**gases (1)**
22:17
**general (2)**
21:22,24
**given (1)**
25:7
**goes (1)**
21:7
**Good (1)**
4:7
**government (1)**
23:16
**government-issued (1)**
23:14
**grant (1)**
19:12
**granted (11)**
12:1;13:6,20,25;
14:1,13;16:20;17:16;
18:14;19:7,21
**granting (1)**
9:23;13:23
**Great (1)**
26:19
**grievance (1)**

9:22
**GS-11 (1)**
5:20
**GS-9 (1)**
5:19
**guess (1)**
14:8
**guilty (1)**
24:12

**H**

**hall (1)**
9:9
**hand (1)**
21:15
**happy (1)**
26:20
**hard (5)**
22:6,11,18,20,24
**hazard (1)**
23:5
**hazardous (1)**
22:16
**health (2)**
22:19;23:5
**hear (3)**
4:16;7:6,8
**hearing (2)**
4:18;21:6
**hereinafter (1)**
4:3
**history (1)**
5:12
**housekeeping (1)**
23:5
**housing (1)**
27:21
**hunger (1)**
28:14

**I**

**Icove (9)**
4:6,7;9:10,12,13;
10:17;26:12,19,22
**identify (1)**
23:19
**imagine (2)**
13:2;24:9
**immediate (2)**
28:6,7
**incident (5)**
24:6,9,17;25:4,5
**include (1)**
22:11
**included (1)**
23:6
**indicate (1)**
15:3
**indicated (1)**
10:4
**individualized (1)**

11:8
**inference (2)**
25:10;26:8
**inform (1)**
14:2
**informal (1)**
10:24
**informed (1)**
13:25
**initiated (7)**
12:4,17,23;13:9,
15;17:12,17
**initiation (1)**
12:14
**inmate (18)**
6:1;14:16;15:11;
20:10,17,19,20,22;
22:9,21;23:21;24:5,7,
14,22;27:2,19,21
**inmates (4)**
6:5,25;19:21;27:21
**inmate's (1)**
24:10
**institution (6)**
22:8,10;28:1,9,11,
16
**institutional (3)**
19:23;20:1,11
**instructs (1)**
5:9
**Internet (1)**
26:21
**interviewed (1)**
24:17
**into (1)**
22:10
**intoxicants (1)**
22:11
**investigate (1)**
25:5
**involved (1)**
12:10
**Item (3)**
13:17;22:6,24
**items (3)**
23:12,14,15

**J**

**Josh (1)**
26:12
**judge (2)**
4:25;5:3
**July (2)**
4:13;5:18
**June (1)**
5:19

**K**

**Kellie (5)**
13:9,10,13,13,15
**Kellie's (7)**

**Case: 4:19-cv-01169-SL  Doc #: 58  Filed:  08/27/21  36 of 39.  PageID #: 958**

Tony Fisher, aka Kellie Rehanna vs.
Federal Bureau of Prisons, et al.

Timothy Smith
July 29, 2021

6:15,21;7:2,11,23;
9:22;12:1
**kind (3)**
19:16;24:25;26:13
**knives (1)**
22:13
**knowledge (12)**
11:20;12:17,23;
13:4;14:21,24;16:1;
17:9;18:22,23,25;
19:9
**known (1)**
17:10

**L**

**Lack (2)**
10:1,15
**late (2)**
18:7,7
**later (1)**
5:5
**lawful (1)**
4:2
**lay (2)**
16:20;28:2
**legal (1)**
17:4
**letters (1)**
23:10
**Lieutenant (11)**
4:7,16;5:19,20;
9:14;10:3;25:5,6;
26:4;28:17,19
**line (1)**
10:18
**lines (1)**
14:15
**listed (2)**
7:20;11:5
**litigation (10)**
12:6,23;15:15,19;
16:2,10,14,15;17:5;
18:4
**little (1)**
16:16
**log (1)**
9:6
**long (1)**
19:11
**longer (1)**
23:7
**look (5)**
6:8,10;8:9;9:15;
19:16
**lose (2)**
27:4,17

**M**

**magazines (1)**
23:10
**makes (1)**

21:7
**manner (1)**
22:22
**manual (2)**
5:25;22:16
**Mark (1)**
11:23
**marked (1)**
6:9
**may (32)**
5:2;6:25;11:25;
12:9;13:9,18,23;
14:19;15:9,13;16:18;
17:3,6,7,8,17;18:1,
14,19,25;19:2,6,10,
22;22:25;25:9,12,15;
26:7,8;27:1,18
**maybe (1)**
18:7
**mean (1)**
25:3
**means (2)**
28:3,12
**medicine (1)**
22:19
**member (2)**
27:1,18
**memo (2)**
14:3,5
**memorized (1)**
25:22
**Mendota (1)**
5:16
**mention (1)**
13:11
**Merlak (2)**
8:8;9:23
**mid (1)**
18:7
**might (1)**
8:14
**minute (1)**
8:13
**Mischaracterizes (3)**
15:21;27:7,14
**more (1)**
9:19
**morning (1)**
4:7
**Moving (1)**
11:2
**much (2)**
26:23;28:17
**must (2)**
5:7;7:1

**N**

**name (3)**
4:7;8:7;13:12
**nature (1)**
21:9
**neatly (1)**

23:11
**necessary (2)**
5:4;7:19
**need (8)**
8:2;9:7,8;10:3;
16:4,24;25:18;28:11
**new (1)**
17:19
**newspapers (1)**
23:10
**Nicotine (1)**
22:17
**Northern (1)**
4:12
**NOTARY (4)**
25:14,18,21;26:2
**notice (1)**
6:3
**notifying (1)**
14:4
**Nuisance (2)**
22:23;23:6
**number (1)**
4:10
**nutshell (1)**
19:5

**O**

**object (2)**
5:2;20:5
**objection (15)**
5:3;7:4,8,8,22,25;
9:25;10:14;15:20;
16:3,22;18:15;21:25;
27:6,13
**objections (2)**
10:5,18
**objects (1)**
5:7
**offender (1)**
5:25
**office (4)**
12:7,19;18:2,2
**officer (5)**
5:15,17;6:17,23;
7:12
**Ohio (1)**
4:12
**Once (1)**
13:25
**one (2)**
8:10;26:24
**only (3)**
6:16;10:8;14:5
**operation (1)**
28:16
**opportunity (4)**
8:11;9:14;24:14,16
**ordinarily (1)**
22:8
**ordinary (4)**
27:25;28:8,10,15

**original (7)**
10:23;17:20,21;
21:5,12,15,19
**originally (1)**
17:2
**otherwise (1)**
5:9
**out (6)**
12:7;14:9;16:21;
27:25;28:8,10
**over (4)**
18:5,13;25:17,19

**P**

**packaging (3)**
21:12,16,19
**page (3)**
6:10;7:20;19:16
**pages (1)**
23:22
**paper (1)**
24:15
**paragraph (5)**
6:11,14,20;19:19,
21
**part (3)**
17:12,17;24:13
**particular (23)**
4:14;6:13,19;9:15;
11:11;12:4,22;13:8,
15,22;14:13,18,20;
15:25;16:2;18:12,23;
19:20;23:24;24:3,13;
26:14;28:4
**pat (14)**
7:14;8:5;12:2;
13:20,20;14:17;
16:20;17:1;20:13;
24:11;26:25;27:1,17,
19
**patted (3)**
6:16,22;7:12
**Paul (1)**
8:17
**pause (1)**
9:8
**pending (1)**
4:11
**people (1)**
12:10
**percent (1)**
18:8
**permitted (2)**
23:7,8
**person (3)**
27:4,10;28:2
**personal (5)**
6:1,5;23:6,9,21
**personally (3)**
11:17;15:6;24:15
**personnel (1)**
7:19

**picture (2)**
14:1,7
**plaintiff's (5)**
6:2,9;8:4,21;13:19;
16:19,25
**please (5)**
6:9;8:9;20:8,9;
23:20
**point (1)**
23:13
**poisonous (1)**
22:16
**policy (5)**
6:1,6;23:21,23,24
**poses (1)**
22:7
**possessed (1)**
22:20
**possession (7)**
20:20,22,25;22:9;
23:2,2;24:5
**posted (2)**
14:1,7
**potentially (1)**
9:18
**preauthorized (1)**
7:1
**preparation (1)**
5:24
**prescribed (2)**
22:21,22
**present (4)**
4:25;5:3;24:20,20
**presented (1)**
10:8
**presently (1)**
4:10
**presents (2)**
23:3,5
**pretty (1)**
28:2
**previous (6)**
8:4,6,7;11:1;15:21;
17:10
**previously (3)**
6:8;15:13;23:1
**print (1)**
14:9
**prior (17)**
8:11;9:15,20,23;
10:6;11:1,18,20;
13:12;16:25;17:8;
18:6,20,25;19:1;
24:18;25:6
**Prisons (1)**
4:9
**problem (2)**
4:18;9:5
**problems (1)**
4:19
**procedure (5)**
6:14,20;7:2,10;
21:10

Case: 4:19-cv-01169-SL  Doc #: 58  Filed:  08/27/21  37 of 39.  PageID #: 959

Tony Fisher, aka Kellie Rehanna vs.                                    Timothy Smith
Federal Bureau of Prisons, et al.                                      July 29, 2021

process (10)
    20:14;21:6;24:1,7,
    13,24;25:1,9,11,25
program (5)
    6:7;11:5;22:15;
    27:2,20
prohibited (2)
    23:2;26:10
prohibitive (1)
    25:13
promoted (1)
    5:20
properly (1)
    15:16
property (6)
    6:1,6;23:7,9,16,21
provide (3)
    5:11;24:1;26:13
provided (3)
    22:14;24:18,22
provides (3)
    6:14,20;26:24
pull (2)
    9:1;26:17
pulled (1)
    26:21
pursuant (2)
    4:14;11:4

Q

quantities (1)
    23:4

R

razor (7)
    20:17,19,20,23;
    21:1,1,4
re (1)
    27:9
reached (1)
    12:7
read (1)
    28:20
reading (2)
    23:18;26:15
reason (10)
    10:12,21,24;11:12,
    13,18;14:20,25;15:6;
    19:5
reasons (1)
    11:18
recall (3)
    5:23;14:19,24
receive (2)
    9:17;24:6
received (2)
    8:20;9:17
receives (1)
    25:4
recess (1)
    9:11

recollection (1)
    14:11
reconsidered (4)
    17:22,24;18:12,21
record (3)
    9:12;10:18;26:12
refer (3)
    13:10,11,13
regarding (2)
    21:22;24:17
regardless (1)
    16:15
regards (1)
    13:17
regional (4)
    12:7,18;18:1,2
Rehanna (1)
    13:13
relates (1)
    13:22
remain (2)
    25:8,24
remedy (2)
    11:3,7
remember (1)
    14:14
repeat (3)
    10:20;15:24;17:15
rephrase (2)
    4:20;6:18
report (5)
    24:6,9,17;25:4,6
reported (1)
    20:16
request (35)
    6:15,21,25;7:3,11,
    23;8:5;9:22;10:6,23;
    11:1,2,4,7,18,20;
    12:1,4,22;13:8,15,19;
    14:13;15:25;16:19;
    17:1,10,12,16,19,20,
    21;18:13,24;19:6
requested (2)
    10:7;15:12
requesting (2)
    7:14,15
requiring (1)
    28:6
resend (1)
    8:21
resolution (1)
    10:24
response (1)
    11:6
restate (1)
    6:18
result (2)
    16:13;24:8
retained (1)
    23:13
retires (1)
    11:24
reverse (1)

    20:12
reversed (2)
    19:22;27:10
review (1)
    8:11
reviewed (4)
    5:25;6:1,2;7:3
reviewing (2)
    5:23;7:11
revoke (2)
    20:2;24:10
revoking (2)
    21:8;24:2
right (6)
    8:24,25;14:23;
    24:19;25:8,24
rights (7)
    24:18,23,23,24,25;
    25:1,7
riot (1)
    28:14
Rule (7)
    4:15;6:2;8:1;10:1,
    15;24:3;26:24
rules (7)
    19:24;20:1,11;
    21:22,24;22:2;24:12
running (3)
    28:1,9,11

S

safe (1)
    23:13
safely (1)
    23:11
sale (1)
    23:8
same (2)
    4:23;16:3
scope (4)
    8:1;10:1,15;22:1
search (11)
    7:15;8:5;13:20;
    14:17;17:1;20:13;
    24:11;26:25;27:1,17,
    19
searches (1)
    27:21
second (1)
    8:9
security (2)
    22:7;23:3
send (1)
    8:25
sent (2)
    8:17,19
serious (1)
    22:7
services (2)
    22:15,19
shaving (2)
    21:2,4

Short (2)
    9:11;14:12
sign (1)
    28:20
Signature (1)
    28:22
silence (6)
    25:9,11,15;26:5,7,8
silent (2)
    25:8,24
situation (1)
    27:10
SMITH (3)
    4:1;26:5;28:19
someone (1)
    24:14
sometime (1)
    18:9
soon (1)
    19:11
sorry (6)
    7:5,6;12:13;13:10;
    25:14;26:2
specifically (2)
    6:4,10
speculation (1)
    18:16
spoiled (1)
    23:13
staff (11)
    12:8,12,15,19;
    13:1;14:2,4,17;
    23:16;27:1,18
stage (1)
    25:10
stages (2)
    25:8,25
stand (1)
    8:13
started (1)
    5:14
state (2)
    4:20;21:5
stated (1)
    14:20
statement (6)
    6:7;22:15;23:23,
    24;27:2,20
statements (2)
    11:5;24:19
States (4)
    4:11;6:24;11:3;
    13:17
stating (1)
    15:5
Steven (1)
    8:8
still (1)
    5:7
stipulate (1)
    10:17
stored (1)
    23:11

strikes (1)
    28:14,15
struggling (1)
    16:16
substances (1)
    22:18
support (2)
    25:12;26:9
sure (1)
    18:8
sworn (1)
    4:2
systems (1)
    5:17

T

talk (1)
    24:14
talking (2)
    24:24;26:5
testified (1)
    4:3
testimony (2)
    4:23;15:22
thoroughly (1)
    9:19
threat (2)
    22:7;23:3
TIMOTHY (1)
    4:1
today (4)
    4:8;9:20;16:17;
    28:18
Today's (2)
    4:13;5:24
told (1)
    9:18
tomorrow (1)
    11:24
Tony (2)
    4:8;13:12
took (7)
    13:18;15:9;16:18,
    21;18:13;19:5,11
tools (2)
    22:12,14
transcript (1)
    28:20
transferred (1)
    5:16
transgender (6)
    5:25;6:24;7:14;
    12:1;13:19;16:19
turn (1)
    12:7
two (3)
    11:21;19:15;22:5
type (2)
    27:5,23
types (1)
    22:5

**Tony Fisher, aka Kellie Rehanna vs.**
**Federal Bureau of Prisons, et al.**

**Timothy Smith**
**July 29, 2021**

## U

**under (4)**
   17:10;23:23;24:2;
   27:3
**Understood (1)**
   5:10
**United (1)**
   4:11
**units (1)**
   27:21
**unless (1)**
   5:9
**up (4)**
   9:1;11:2;12:5;
   26:17
**upheld (1)**
   24:9
**upon (1)**
   10:22
**used (7)**
   7:11;22:22;25:9,
   12;26:6,7,9
**utilized (1)**
   24:10

## V

**Vague (3)**
   7:4,9,22
**verbiage (1)**
   14:14
**versus (1)**
   4:9
**via (1)**
   18:2
**violate (1)**
   20:10
**violating (1)**
   24:12
**violation (1)**
   19:25
**voice (1)**
   4:16

## W

**waived (1)**
   28:22
**warden (18)**
   7:1,15;8:6;11:10,
   22;12:11,16;16:11;
   18:5,6,11,24;19:8,23,
   25;20:12;21:7;24:1
**warden's (4)**
   7:17,18;8:7;11:12
**weapons (1)**
   22:11
**website (1)**
   26:17
**what's (2)**
   10:8;28:10

**whose (1)**
   23:2
**Williams (1)**
   11:23
**within (1)**
   19:14
**without (1)**
   23:16
**WITNESS (6)**
   8:16,23;25:16,20,
   23;26:3
**witnesses (1)**
   24:20
**witness's (1)**
   15:21
**work (2)**
   9:9;27:22
**writing (4)**
   13:21;14:6,8,11
**wrong (1)**
   27:16

## Y

**yesterday (1)**
   8:20

## 1

**100 (1)**
   18:8
**11 (4)**
   6:10;7:20;11:25;
   19:17
**12 (2)**
   6:11;19:19
**17 (6)**
   13:18;15:9;16:18;
   17:17;18:14;19:6
**19-CV-1169 (1)**
   4:10

## 2

**2 (3)**
   6:9;9:19;19:17
**2004 (1)**
   5:13
**2011 (2)**
   5:14,15
**2014 (1)**
   5:18
**2016 (1)**
   5:19
**2017 (4)**
   8:6;15:12;17:2,20
**2018 (3)**
   18:7,9,10
**2019 (1)**
   18:10
**2021 (18)**
   4:13;11:25;12:9;
   13:9,18;15:10,14;

16:18;17:3,7,8,17;
18:1,14,19,25;19:6,
10
**29 (1)**
   4:13

## 3

**30b6 (6)**
   4:15;6:3;8:1;10:1,
   15;22:1

## 5

**5580.08 (2)**
   6:7;23:22

## 8

**8 (7)**
   6:4;8:9;9:17,20;
   10:22;13:17;23:22

## 9

**9 (1)**
   23:22
**9:37 (1)**
   28:21

30

| | |
|---|---|
| 1 | I have read the foregoing transcript from page 1 |
| 2 | through page 28 and note the following corrections: |
| 3 | PAGE-LINE        REQUESTED CHANGE        REASON FOR CHANGE |
| 4 | Page 19:23       "violated" added        Typographical error |
| 5 |                  before "institution" |
| 6 | Page 24:6        add "the inmate would   Typographical error |
| 7 |                  receive an incident |
|   |                  report" |
| 8 | Page 25:7        Should read "he will"   Typographical error |
| 9 |                  be given |

TIMOTHY
SMITH

Digitally signed by TIMOTHY
SMITH
Date: 2021.08.18 11:26:36
-04'00'

_____          _____
Timothy Smith                            [Date]