UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TONY FISHER, aka KELLIE REHANNA, | ) ) ) | CASE NO.: 4:19-CV-1169 |
| Plaintiff, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | NOTICE OF FILING THE DEPOSITON OF LORI HUNTER, N.P. |
| FEDERAL BUREAU OF PRISONS, *et al.,* | ) ) ) | |
| Defendants. | ) | |

Plaintiff, Tony Fisher, aka Kellie Rehanna, by and through counsel, hereby notifies this

Court and Defendants that the deposition of Lori Hunter, N.P. that was taken on July 30, 2021

(attached hereto) has been filed in this case.

Respectfully submitted,

*/s/Edward A. Icove*
Edward A. Icove (0019646)
Icove Legal Group, Ltd.
Terminal Tower, Ste. 3220
50 Public Square
Phone (216) 802-0000; Fax (216) 802-0002
ed@icovelegal.com
Attorney for Plaintiff Tony Fisher,
aka Kellie Rehanna

## CERTIFICATE OF SERVICE

On August 27, 2021, this document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this through the Court's system.

/s/ Edward A. Icove
Edward A. Icove

1

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF OHIO
 2                  EASTERN DIVISION

 3                     - - -

 4   Tony Fisher, aka        )
     Kellie Rehanna,         )
 5                           )
               Plaintiff,    )
 6                           )
          vs.                )   Case No. 4:19CV1169
 7                           )   Sara Lioi, J.
     Federal Bureau of       )
 8   Prisons, et al.,        )
                             )
 9             Defendants.   )

10                     - - -

11        Deposition of Lori Hunter, N.P., a witness

12   herein, called on behalf of the plaintiff for oral

13   examination, pursuant to the Federal Rules of Civil

14   Procedure, taken before Karen A. Toth, Notary Public

15   in and for the State of Ohio, pursuant to notice,

16   via Zoom, on Friday, July 30, 2021, commencing at

17   10:06 a.m.

18                     - - -

19

20

21

22

23

24

25
```

ORIGINAL

```
 1    APPEARANCES:

 2    On behalf of the Plaintiff:

 3          Ed Icove, Esq.
            Icove Legal Group LTD
 4          Terminal Tower
            500 Public Square, Suite 3320
 5          Cleveland, Ohio 44113
            216-802-0000
 6

 7    On behalf of the Defendants:

 8          Joshua Gardner, Esq.
            United States Department of Justice
 9          Civil Division, Federal Programs Branch
            1100 L Street NW
10          Room 11502
            Washington, D.C. 20005
11          202-305-7583

12

13    Also present:

14          Kellie Rehanna

15

16                        -  -  -

17

18

19

20

21

22

23

24

25
```

3

```
 1                          INDEX

 2   WITNESS:                              CROSS

 3   Lori Hunter, N.P.

 4         by Mr. Icove                     4

 5                          -  -  -

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        LORI HUNTER, N.P.
2   Of lawful age, being first duly sworn, as
3   hereinafter certified, was examined and testified as
4   follows:
5            MS. GARDNER:    And Karen, the witness
6        will read and sign.
7            MR. ICOVE:        For the record, while
8        we're talking, you'll stipulate that the
9        affirmation and oath that was just given to
10       Dr. Hunter is sufficient over Zoom?
11           MR. GARDNER:      Yes, sir.
12           MR. ICOVE:        Thank you.  Thanks
13       for the compliment too.
14           MR. GARDNER:      It's Friday.
15           MR. ICOVE:        The only sir I know
16       is Sidney Poitier.
17           MR. GARDNER:      Fair enough.
18           MR. ICOVE:        Thank you.
19               CROSS-EXAMINATION
20  By Mr. Icove:
21  Q    Dr. Hunter, I represent Tony Fisher who is
22       also known as Kellie Rehanna who I will be
23       referring to as Kellie for the purposes of
24       this deposition.  And it's in her case against
25       the BOP and the Federal Correction Institution

|     |   |                                                         |
|-----|---|---------------------------------------------------------|
| 1   |   | Elkton.  The case number is 19CV1169 and it's           |
| 2   |   | presently pending in the Northern District of           |
| 3   |   | Ohio, Eastern Division.                                 |
| 4   |   | Have you ever testified at a                            |
| 5   |   | deposition or in court before?                          |
| 6   | A | Once about 25 years ago.                                |
| 7   | Q | Wow.  What type of case was it; if you recall?          |
| 8   | A | It was a medical case as well.                          |
| 9   | Q | And was that by deposition or was that by --            |
| 10  |   | was that actually in court?                             |
| 11  | A | It was deposition.                                      |
| 12  | Q | So just to refresh your memory, you recall              |
| 13  |   | that your testimony is the same as if it were           |
| 14  |   | in court except there is no judge present.              |
| 15  |   | And Mr. Gardner may object to a question, and           |
| 16  |   | since there is no judge any objection will              |
| 17  |   | have to be considered, if necessary, by the             |
| 18  |   | court.  So if Mr. Gardner objects you still             |
| 19  |   | must answer the question to the best of your            |
| 20  |   | ability unless he instructs you otherwise.  Do          |
| 21  |   | you understand that?                                    |
| 22  | A | Understood.                                             |
| 23  | Q | Can you briefly provide us with your                    |
| 24  |   | educational background as well as your                  |
| 25  |   | employment history at BOP?                              |

| | | |
|---|---|---|
| 1 | A | Certainly.  I receive my Bachelor's in nursing |
| 2 | | in 1995.  I have a subsequent Master's Degree |
| 3 | | from the University of Maryland as an adult |
| 4 | | nurse practitioner, and most recently I've |
| 5 | | obtained my Doctorate in nursing from Robert |
| 6 | | Morris University. |
| 7 | | As far as my work history with the |
| 8 | | Bureau of Prisons, I started in the Bureau of |
| 9 | | Prisons December of 2008 and I left at the end |
| 10 | | of January 2019. |
| 11 | Q | Are you currently retired? |
| 12 | A | Yes and no.  I'm currently retired from the |
| 13 | | United States Public Health Service but I do |
| 14 | | work full time on I guess the civilian sector, |
| 15 | | as it were. |
| 16 | Q | And can you just state to us what's the |
| 17 | | civilian sector? |
| 18 | A | Nongovernment medical. |
| 19 | Q | Right.  Who do you work for?  Maybe that's a |
| 20 | | better -- |
| 21 | A | I work for Heritage Valley Health System. |
| 22 | Q | Did you receive any certifications or |
| 23 | | licenses? |
| 24 | A | Yes. |
| 25 | Q | Okay.  And can you tell us what those are |

| | | |
|---|---|---|
| 1 | | please? |
| 2 | A | I'm a registered nurse.  I'm also a |
| 3 | | registered -- a certified register nurse |
| 4 | | practitioner. |
| 5 | Q | Are you aware of the fact that your testimony |
| 6 | | today is considered to be protected activity |
| 7 | | by federal law? |
| 8 | A | Can you define protected activity by federal |
| 9 | | law? |
| 10 | Q | Yeah, certainly.  Let me just state it a |
| 11 | | different way.  Are you aware of the fact that |
| 12 | | your testimony today is to be freely given and |
| 13 | | that neither the government nor anyone else |
| 14 | | can retaliate against you for testifying today |
| 15 | | or for participating in this case in any |
| 16 | | manner? |
| 17 | A | Yes. |
| 18 | Q | Were you involved in the treatment plan and |
| 19 | | treatment or any decisions regarding Kellie's |
| 20 | | care? |
| 21 | | MR. GARDNER:     Objection.  Compound. |
| 22 | Q | I'll break it up for you.  Have you been |
| 23 | | involved in any treatment plan regarding |
| 24 | | Kellie? |
| 25 | A | Yes. |

1  Q    Have you been involved in any actual treatment
2       of Kellie?
3  A    I don't understand the question exactly.
4  Q    Well, in your capacity at the BOP when you
5       were involved in her treatment plan did you
6       review her treatment or were you involved in
7       the treatment?
8  A    Yes.
9  Q    Were you involved in any decisions of Kellie's
10      care as it related to this case?
11 A    Yes and no.
12 Q    Okay.  Why don't we divide that up then.  Go
13      ahead.
14 A    So the decision of the care at the local level
15      would not have been in my purview, that would
16      have been up to the clinical director and/or
17      her assigned mid-level provider.  And then as
18      far as the decision making overall, that is
19      usually -- as far as different aspects of the
20      treatment, it depends on the treatment in
21      question whether or not it's local level or
22      higher than that.
23 Q    Who was the clinical director at that time?
24 A    John Dunlop.
25 Q    And how long did you know Kellie insofar as

| | | |
|---|---|---|
| 1 | | being involved in her treatment plan and |
| 2 | | treatment? |
| 3 | A | I don't recall exactly the time frame. |
| 4 | Q | Was it a few years, a couple years? |
| 5 | A | I would have to know what her entry into the |
| 6 | | prison system was as far as FCI Elkton is |
| 7 | | concerned.  I couldn't say for sure when my |
| 8 | | first encounter with her was. |
| 9 | Q | Okay.  And in what capacity would that |
| 10 | | encounter be? |
| 11 | A | At that time I was functioning as the |
| 12 | | assistant health services administrator.  So |
| 13 | | it would have been largely in an |
| 14 | | administrative capacity. |
| 15 | Q | If she came into the system in 2015, does that |
| 16 | | help you at all answer the previous question |
| 17 | | that I asked you? |
| 18 | A | She came into the system in 2015, but I don't |
| 19 | | know if she was at FCI Elkton in 2015. |
| 20 | Q | Let's assume that she was just for the sake of |
| 21 | | discussion.  So then if that was the case, how |
| 22 | | long would you have been involved with her? |
| 23 | A | Again, that's -- it's difficult for me to |
| 24 | | answer.  I don't have a direct answer for |
| 25 | | that. |

| | | |
|---|---|---|
| 1 | Q | Okay. |
| 2 | A | I would have to look at the medical record, to |
| 3 | | be honest. |
| 4 | Q | Right.  So what documents did you review prior |
| 5 | | to today's deposition? |
| 6 | A | Anything that Josh sent to me. |
| 7 | Q | And that was Exhibit 10 I think was sent to |
| 8 | | you? |
| 9 | A | Yes. |
| 10 | Q | Why don't we look at that now, since we're |
| 11 | | talking about it. |
| 12 | A | Okay. |
| 13 | Q | And what I'd like to do is have you go through |
| 14 | | these -- there is four particular documents. |
| 15 | | And I put them in chronological order.  I want |
| 16 | | to go through them with you. |
| 17 | | So let's look at the first document. |
| 18 | | Was that particular document prepared by you? |
| 19 | A | Exhibit 10? |
| 20 | Q | Yes, Exhibit 10.  And in the coroner there's |
| 21 | | page number, it says 1528.  Did you prepare |
| 22 | | that particular sheet? |
| 23 | A | Yes. |
| 24 | Q | And did you make that note on or about October |
| 25 | | 13, 2017? |

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | And was that note prepared in the course of |
| 3 | | regularly conducted business at Elkton? |
| 4 | A | Yes. |
| 5 | Q | To the best of your knowledge, this note was |
| 6 | | kept in the course of regularly conducted |
| 7 | | business at Elkton; is that correct? |
| 8 | A | Correct. |
| 9 | Q | And was it regular -- was it your practice -- |
| 10 | | your regular practice or your position at |
| 11 | | Elkton to prepare notes like this? |
| 12 | A | Yes. |
| 13 | Q | Were you at all responsible to make |
| 14 | | recommendations for gender-affirming surgery |
| 15 | | -- gender-affirming surgery requests for |
| 16 | | inmates at Elkton? |
| 17 | A | Can you repeat the question? |
| 18 | Q | Certainly.  Were you, in your capacity, at all |
| 19 | | responsible for making recommendations for |
| 20 | | gender-affirming surgery requests at -- of BOP |
| 21 | | inmates at Elkton? |
| 22 | A | I completed the paperwork. |
| 23 | Q | Was Kellie cooperative with you regarding the |
| 24 | | paperwork? |
| 25 | A | Yes. |

12

| | | |
|---|---|---|
| 1 | Q | Was she cooperative with you in all of your |
| 2 | | dealings with her? |
| 3 | A | Yes. |
| 4 | Q | Did you have any input besides preparing the |
| 5 | | paperwork for making a recommendation for |
| 6 | | gender-affirming surgery for Kellie? |
| 7 | | MR. GARDNER:       Objection.   Vague. |
| 8 | A | Can you repeat the question? |
| 9 | Q | Certainly.  Not a problem at all. |
| 10 | | Do you have -- did you have any input |
| 11 | | into making a recommendation for |
| 12 | | gender-affirming surgery for Kellie? |
| 13 | | MR. GARDNER:       Same objection. |
| 14 | A | Recommendation as far as whether or not she |
| 15 | | needed the surgery, no.  Recommendation as to |
| 16 | | what steps to take the paperwork to, yes. |
| 17 | Q | And what was your recommendation in that |
| 18 | | respect? |
| 19 | A | If you're speaking directly to this document, |
| 20 | | I forwarded the request.  I put a request in |
| 21 | | for her to be considered for gender |
| 22 | | reassignment. |
| 23 | Q | Okay. |
| 24 | A | Or gender-affirming surgery. |
| 25 | Q | And is it fair to say that Kellie requested |

|    |   |                                                          |
|----|---|----------------------------------------------------------|
| 1  |   | gender-affirming surgery on two occasions?               |
| 2  |   | MR. GARDNER:        Objection.  Lack of                  |
| 3  |   | foundation.                                              |
| 4  | Q | You need to go ahead and answer the question.            |
| 5  | A | Oh.                                                      |
| 6  | Q | Mr. Gardner is entitled to make objections to            |
| 7  |   | various things, but you still need to answer             |
| 8  |   | the question.  If you need me to restate it I            |
| 9  |   | will.                                                    |
| 10 | A | I was thinking.                                          |
| 11 | Q | Let me make it simplier for you.  On or about            |
| 12 |   | October of 2017 is it fair to say that you               |
| 13 |   | requested gender-affirming surgery for Kellie?           |
| 14 | A | Yes.                                                     |
| 15 | Q | Do you recall making a second request for her            |
| 16 |   | sometime in December of 2018?                            |
| 17 | A | Without looking at the medical record I                  |
| 18 |   | wouldn't be certain.                                     |
| 19 | Q | Let's look at the next page.                             |
| 20 | A | Okay.                                                    |
| 21 | Q | Is that particular note, February 13, 2018,              |
| 22 |   | was it made on or about that particular day?             |
| 23 | A | It is.                                                   |
| 24 | Q | And it's fair to say that that was made in the           |
| 25 |   | ordinary course of regular conducted --                  |

```
 1              Was that note prepared and kept in the
 2       ordinary and regular course of business
 3       conducted in Elkton?
 4   A   Yes.
 5   Q   Was this note a regular practice of your
 6       position as an administrator at Elkton?
 7   A   Yes.
 8   Q   Is the information contained in this note
 9       true, to the best of your knowledge and
10       belief, as we sit here today?
11   A   Yes.
12   Q   Can we go to the next page of Exhibit 10, and
13       that is Fisher 002649.
14   A   Okay.
15   Q   Can you identify that particular document and
16       what the attachments were?
17   A   I don't know what the attachments were.  It
18       just -- those weren't included.
19   Q   Okay.  That was an email that you sent out on
20       February 14, 2018?
21   A   Correct.
22   Q   Is it fair to say that that particular email
23       was sent out in connection with Kellie's
24       request for gender-affirming surgery on or
25       about that time?
```

|   |   |   |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | And if we look at the next page, does that |
| 3 |   | appear to be a part of that particular email |
| 4 |   | trail? |
| 5 | A | It does. |
| 6 | Q | And can you explain to us your note that's on |
| 7 |   | that particular page? |
| 8 | A | Sure.  There are actually two parts.  Which |
| 9 |   | page?  I'm sorry. |
| 10 | Q | You don't have to apologize for anything. |
| 11 |   | It's on 002650.  That's the page I'm looking |
| 12 |   | at right now. |
| 13 | A | Okay. |
| 14 | Q | If you can just explain to me the context of |
| 15 |   | that particular note. |
| 16 | A | So I sent an email, as it says the region has |
| 17 |   | reached out and requested that we send the |
| 18 |   | consult to the TCCT, and I was reaching out |
| 19 |   | for additional information to include in that |
| 20 |   | consult. |
| 21 | Q | And those four items were the additional |
| 22 |   | information that you needed?  Or you needed |
| 23 |   | two, three and four; is that right? |
| 24 | A | Correct. |
| 25 | Q | And then the next page is marked 002654 in the |

| | | |
|---|---|---|
| 1 | | corner.  Can you -- |
| 2 | A | I have it. |
| 3 | Q | Can you explain to us what was going on on |
| 4 | | that particular note? |
| 5 | A | So in that -- it appears that Melissa, who was |
| 6 | | the regional health systems specialist, |
| 7 | | contacted Jane to say -- to ask  what the |
| 8 | | status was.  And then Jane forwarded or |
| 9 | | emailed me along with two others with regard |
| 10 | | to what we should do with the packet. |
| 11 | Q | Okay.  And the things that are contained in |
| 12 | | the packet are the items that we talked about |
| 13 | | above, one through four; is that correct? |
| 14 | A | They would have been included, yes. |
| 15 | Q | And there is a note here that says, "I vote we |
| 16 | | submit to TCCT."  Is that your note or is that |
| 17 | | somebody else's? |
| 18 | A | That's my note. |
| 19 | Q | And why did you write that particular note, so |
| 20 | | that I know? |
| 21 | A | So the TCCT is the transgender clinical care |
| 22 | | team.  And I wrote that specifically because |
| 23 | | the clinical guidance for the medical |
| 24 | | management of transgender inmates, that's the |
| 25 | | next step.  That is the appropriate place to |

|    |   |                                                          |
|----|---|----------------------------------------------------------|
| 1  |   | send any requests for surgery.                           |
| 2  | Q | So it's fair to say that she had been                    |
| 3  |   | cooperative and you had gotten all the                   |
| 4  |   | documentation necessary in order to submit               |
| 5  |   | that to the TCCT?                                         |
| 6  | A | Correct.                                                 |
| 7  | Q | Okay.  Do you recall whether or not this                 |
| 8  |   | request was denied or granted?                           |
| 9  | A | I don't recall.                                          |
| 10 | Q | Do you believe -- you may not know the answer            |
| 11 |   | to this question.  Do you believe that                   |
| 12 |   | gender-affirming surgery is a medical                    |
| 13 |   | necessity for Kellie, and why or why not?                |
| 14 |   | MR. GARDNER:      Objection.  Lack of                    |
| 15 |   | foundation.  Calls for speculation.                      |
| 16 | Q | You need to answer the question to the best of           |
| 17 |   | your ability.                                            |
| 18 | A | Can you repeat the question please?                      |
| 19 | Q | Certainly.  Do you believe that                          |
| 20 |   | gender-affirming surgery is a medical                    |
| 21 |   | necessity for Kellie, why or why not?                    |
| 22 |   | MR. FELDON:      Same objection.                         |
| 23 | A | So is it a medical necessity for Kellie?  I              |
| 24 |   | think that would be a matter or question for             |
| 25 |   | Kellie.                                                  |

1   Q   Okay.

2   A   But as far as -- as far as whether or not it's

3       a medical necessity, if we are at -- in the

4       context of urgency in a conventional sense it

5       wouldn't have been considered medically

6       necessary.

7   Q   And what you're referring to is if there is an

8       emergency situation, somebody had a ruptured

9       gall bladder or needed some sort of emergency

10      treatment, that's what you're talking about

11      being medically necessary; is that correct?

12  A   Correct.  Medical necessity is something, from

13      my understanding, that without treating them

14      immediately it will cost perhaps life, limb or

15      eyesight.

16  Q   And do you believe that Kellie would benefit

17      from gender-affirming surgery, why or why not?

18          MR. GARDNER:      Objection.  Lack of

19      foundation.  Calls for speculation.

20  A   So my answer to that is that's really whether

21      or not Kellie would benefit is for Kellie to

22      say.

23  Q   Okay.  I have no further questions at this

24      time and I want to thank you for coming today.

25      Your counsel will instruct you on whether or

19

```
 1        not you should waive signature or read the

 2        deposition.

 3             MR. GARDNER:      Already did at the

 4        beginning.

 5             MR. ICOVE:        I missed it.  I'm so

 6        sorry.

 7             MR. GARDNER:      It's okay.

 8             Dr. Hunter, thank you so much for your

 9        time.

10             MR. ICOVE:         Nice to meet you,

11        Doctor.

12             Off the record.

13             (Deposition concluded at 10:33 a.m.)

14             (Signature not waived.)

15                    - - -

16

17

18

19

20

21

22

23

24

25
```

1    SIGNATURE PAGE

2    Case Name:    Tony Fisher, etc. vs. Federal Bureau
                  of Prisons, et al.
3

4    Case Number:  4:19CV1169

5    Deponent:     Lori Hunter, NP

6    Date:         Friday, July 30, 2021

7    To the Reporter:

8         I have read the entire transcript of my

9    Deposition taken in the captioned matter or the same

10   has been read to me.  I request that the following

11   changes be entered upon the record for the reasons

12   indicated.

13        I have signed my name to the Errata Sheet and

14   the appropriate Certificate and authorize you to

15   attach both to the original transcript.

16

17

18

19

20                          _____
                            Lori Hunter, N.P.

21        Subscribed and sworn to before me this

22   _____day of _____, 2021.

23

24                          _____
                            Notary Public

25   My commission expires:_____.

21

```
 1          I have read the foregoing transcript from page
 2    1 through page 19 and note the following
 3    corrections:
 4    PAGE-LINE        REQUESTED CHANGE        REASON FOR CHANGE
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25    _____        _____
      Lori Hunter, N.P.                Date
```

```
 1   State of Ohio,          )
                             )  SS:   CERTIFICATE
 2   County of Cuyahoga,     )

 3        I, Karen A. Toth, Notary Public in and for the

 4   State of Ohio, duly commissioned and qualified, do

 5   hereby certify that the within named witness,

 6   Lori Hunter, N.P., was by me first duly sworn to

 7   testify the truth, the whole truth, and nothing but

 8   the truth in the cause aforesaid; that the testimony

 9   then given by her was by me reduced to

10   stenotypy/computer in the presence of said witness,

11   afterward transcribed, and that the foregoing is a

12   true and correct transcript of the testimony so

13   given by her as aforesaid.

14        I do further certify that this deposition was

15   taken at the time and place in the foregoing caption

16   specified and was completed without adjournment

17        I do further certify that I am not a relative,

18   counsel, or attorney of either party, or otherwise

19   interested in the event of this action.

20        IN WITNESS WHEREOF, I have hereunto set my

21   hand and affixed my seal of office at Cleveland,

22   Ohio on this 5th day of August, 2021.

23

24   Karen A. Toth, Notary Public in
     and for the State of Ohio.
25   My Commission expires May 6, 2023.
```

Tony Fisher, aka Kellie Rehanna vs.
Federal Bureau of Prisons, et al.

Lori Hunter
July 30, 2021

## A

ability (2)
  5:20;17:17
above (1)
  16:13
activity (2)
  7:6,8
actual (1)
  8:1
actually (2)
  5:10;15:8
additional (2)
  15:19,21
administrative (1)
  9:14
administrator (2)
  9:12;14:6
adult (1)
  6:3
affirmation (1)
  4:9
Again (1)
  9:23
against (2)
  4:24;7:14
age (1)
  4:2
ago (1)
  5:6
ahead (2)
  8:13;13:4
along (1)
  16:9
and/or (1)
  8:16
apologize (1)
  15:10
appear (1)
  15:3
appears (1)
  16:5
appropriate (1)
  16:25
aspects (1)
  8:19
assigned (1)
  8:17
assistant (1)
  9:12
assume (1)
  9:20
attachments (2)
  14:16,17
aware (2)
  7:5,11

## B

Bachelor's (1)
  6:1
background (1)

5:24
beginning (1)
  19:4
belief (1)
  14:10
benefit (2)
  18:16,21
besides (1)
  12:4
best (4)
  5:19;11:5;14:9;
  17:16
better (1)
  6:20
bladder (1)
  18:9
BOP (4)
  4:25;5:25;8:4;11:20
break (1)
  7:22
briefly (1)
  5:23
Bureau (2)
  6:8,8
business (3)
  11:3,7;14:2

## C

Calls (2)
  17:15;18:19
came (2)
  9:15,18
Can (14)
  5:23;6:16,25;7:8,14;
  11:17;12:8;14:12,15;
  15:6,14;16:1,3;17:18
capacity (4)
  8:4;9:9,14;11:18
care (4)
  7:20;8:10,14;16:21
case (7)
  4:24;5:1,7,8;7:15;
  8:10;9:21
certain (1)
  13:18
Certainly (5)
  6:1;7:10;11:18;12:9;
  17:19
certifications (1)
  6:22
certified (2)
  4:3;7:3
chronological (1)
  10:15
civilian (2)
  6:14,17
clinical (4)
  8:16,23;16:21,23
coming (1)
  18:24
completed (1)
  11:22

compliment (1)
  4:13
Compound (1)
  7:21
concerned (1)
  9:7
concluded (1)
  19:13
conducted (4)
  11:3,6;13:25;14:3
connection (1)
  14:23
considered (4)
  5:17;7:6;12:21;18:5
consult (2)
  15:18,20
contacted (1)
  16:7
contained (2)
  14:8;16:11
context (2)
  15:14;18:4
conventional (1)
  18:4
cooperative (3)
  11:23;12:1;17:3
corner (1)
  16:1
coroner (1)
  10:20
Correction (1)
  4:25
cost (1)
  18:14
counsel (1)
  18:25
couple (1)
  9:4
course (4)
  11:2,6;13:25;14:2
court (4)
  5:5,10,14,18
CROSS-EXAMINATION (1)
  4:19
currently (2)
  6:11,12

## D

day (1)
  13:22
dealings (1)
  12:2
December (2)
  6:9;13:16
decision (2)
  8:14,18
decisions (2)
  7:19;8:9
define (1)
  7:8
Degree (1)
  6:2

denied (1)
  17:8
depends (1)
  8:20
deposition (7)
  4:24;5:5,9,11;10:5;
  19:2,13
different (2)
  7:11;8:19
difficult (1)
  9:23
direct (1)
  9:24
directly (1)
  12:19
director (2)
  8:16,23
discussion (1)
  9:21
District (1)
  5:2
divide (1)
  8:12
Division (1)
  5:3
Doctor (1)
  19:11
Doctorate (1)
  6:5
document (4)
  10:17,18;12:19;
  14:15
documentation (1)
  17:4
documents (2)
  10:4,14
Dr (3)
  4:10,21;19:8
duly (1)
  4:2
Dunlop (1)
  8:24

## E

Eastern (1)
  5:3
educational (1)
  5:24
Elkton (10)
  5:1;9:6,19;11:3,7,11,
  16,21;14:3,6
else (1)
  7:13
else's (1)
  16:17
email (4)
  14:19,22;15:3,16
emailed (1)
  16:9
emergency (2)
  18:8,9
employment (1)

5:25
encounter (2)
  9:8,10
end (1)
  6:9
enough (1)
  4:17
entitled (1)
  13:6
entry (1)
  9:5
exactly (2)
  8:3;9:3
examined (1)
  4:3
except (1)
  5:14
Exhibit (4)
  10:7,19,20;14:12
explain (3)
  15:6,14;16:3
eyesight (1)
  18:15

## F

fact (2)
  7:5,11
Fair (6)
  4:17;12:25;13:12,24;
  14:22;17:2
far (7)
  6:7;8:18,19;9:6;
  12:14;18:2,2
FCI (2)
  9:6,19
February (2)
  13:21;14:20
Federal (3)
  4:25;7:7,8
FELDON (1)
  17:22
few (1)
  9:4
first (3)
  4:2;9:8;10:17
Fisher (2)
  4:21;14:13
follows (1)
  4:4
forwarded (2)
  12:20;16:8
foundation (3)
  13:3;17:15;18:19
four (4)
  10:14;15:21,23;
  16:13
frame (1)
  9:3
freely (1)
  7:12
Friday (1)
  4:14

FINCUN-MANCINI — THE COURT REPORTERS
(216) 696-2272

(1) ability - Friday

Lori Hunter
July 30, 2021

Case: 4:19-cv-01169-SL   Doc #: 62   Filed: 08/27/21   26 of 28.   PageID #: 1095

Tony Fisher, aka Kellie Rehanna vs.
Federal Bureau of Prisons, et al.

full (1)
    6:14
functioning (1)
    9:11
further (1)
    18:23

**G**

gall (1)
    18:9
GARDNER (15)
    4:5,11,14,17;5:15,
    18;7:21;12:7,13;13:2,
    6;17:14;18:18;19:3,7
gender (1)
    12:21
gender-affirming (12)
    11:14,15,20;12:6,12,
    24;13:1,13;14:24;
    17:12,20;18:17
given (2)
    4:9;7:12
government (1)
    7:13
granted (1)
    17:8
guess (1)
    6:14
guidance (1)
    16:23

**H**

Health (4)
    6:13,21;9:12;16:6
help (1)
    9:16
hereinafter (1)
    4:3
Heritage (1)
    6:21
higher (1)
    8:22
history (2)
    5:25;6:7
honest (1)
    10:3
HUNTER (4)
    4:1,10,21;19:8

**I**

ICOVE (7)
    4:7,12,15,18,20;19:5,
    10
identify (1)
    14:15
immediately (1)
    18:14
include (1)
    15:19
included (2)

14:18;16:14
information (3)
    14:8;15:19,22
inmates (3)
    11:16,21;16:24
input (2)
    12:4,10
insofar (1)
    8:25
Institution (1)
    4:25
instruct (1)
    18:25
instructs (1)
    5:20
into (4)
    9:5,15,18;12:11
involved (8)
    7:18,23;8:1,5,6,9;
    9:1,22
items (2)
    15:21;16:12

**J**

Jane (2)
    16:7,8
January (1)
    6:10
John (1)
    8:24
Josh (1)
    10:6
judge (2)
    5:14,16

**K**

Karen (1)
    4:5
Kellie (17)
    4:22,23;7:24;8:2,25;
    11:23;12:6,12,25;
    13:13;17:13,21,23,25;
    18:16,21,21
Kellie's (3)
    7:19;8:9;14:23
kept (2)
    11:6;14:1
knowledge (2)
    11:5;14:9
known (1)
    4:22

**L**

Lack (3)
    13:2;17:14;18:18
largely (1)
    9:13
law (2)
    7:7,9
lawful (1)

4:2
left (1)
    6:9
level (2)
    8:14,21
licenses (1)
    6:23
life (1)
    18:14
limb (1)
    18:14
local (2)
    8:14,21
long (2)
    8:25;9:22
look (5)
    10:2,10,17;13:19;
    15:2
looking (2)
    13:17;15:11
LORI (1)
    4:1

**M**

making (5)
    8:18;11:19;12:5,11;
    13:15
management (1)
    16:24
manner (1)
    7:16
marked (1)
    15:25
Maryland (1)
    6:3
Master's (1)
    6:2
matter (1)
    17:24
may (2)
    5:15;17:10
Maybe (1)
    6:19
medical (10)
    5:8;6:18;10:2;13:17;
    16:23;17:12,20,23;
    18:3,12
medically (2)
    18:5,11
meet (1)
    19:10
Melissa (1)
    16:5
memory (1)
    5:12
mid-level (1)
    8:17
missed (1)
    19:5
Morris (1)
    6:6
most (1)

6:4
much (1)
    19:8
must (1)
    5:19

**N**

necessary (4)
    5:17;17:4;18:6,11
necessity (5)
    17:13,21,23;18:3,12
need (4)
    13:4,7,8;17:16
needed (4)
    12:15;15:22,22;18:9
neither (1)
    7:13
next (5)
    13:19;14:12;15:2,25;
    16:25
Nice (1)
    19:10
Nongovernment (1)
    6:18
nor (1)
    7:13
Northern (1)
    5:2
note (14)
    10:24;11:2,5;13:21;
    14:1,5,8;15:6,15;16:4,
    15,16,18,19
notes (1)
    11:11
NP (1)
    4:1
number (2)
    5:1;10:21
nurse (3)
    6:4;7:2,3
nursing (2)
    6:1,5

**O**

oath (1)
    4:9
object (1)
    5:15
objection (8)
    5:16;7:21;12:7,13;
    13:2;17:14,22;18:18
objections (1)
    13:6
objects (1)
    5:18
obtained (1)
    6:5
occasions (1)
    13:1
October (2)
    10:24;13:12

Off (1)
    19:12
Ohio (1)
    5:3
Once (1)
    5:6
one (1)
    16:13
only (1)
    4:15
order (2)
    10:15;17:4
ordinary (2)
    13:25;14:2
others (1)
    16:9
otherwise (1)
    5:20
out (4)
    14:19,23;15:17,18
over (1)
    4:10
overall (1)
    8:18

**P**

packet (2)
    16:10,12
page (8)
    10:21;13:19;14:12;
    15:2,7,9,11,25
paperwork (4)
    11:22,24;12:5,16
part (1)
    15:3
participating (1)
    7:15
particular (12)
    10:14,18,22;13:21,
    22;14:15,22;15:3,7,15;
    16:4,19
parts (1)
    15:8
pending (1)
    5:2
perhaps (1)
    18:14
place (1)
    16:25
plan (4)
    7:18,23;8:5;9:1
please (2)
    7:1;17:18
Poitier (1)
    4:16
position (2)
    11:10;14:6
practice (3)
    11:9,10;14:5
practitioner (2)
    6:4;7:4
prepare (1)

Tony Fisher, aka Kellie Rehanna vs.
Federal Bureau of Prisons, et al.

Lori Hunter
July 30, 2021

10:21;11:11
**prepared (3)**
    10:18;11:2;14:1
**preparing (1)**
    12:4
**present (1)**
    5:14
**presently (1)**
    5:2
**previous (1)**
    9:16
**prior (1)**
    10:4
**prison (1)**
    9:6
**Prisons (2)**
    6:8,9
**problem (1)**
    12:9
**protected (2)**
    7:6,8
**provide (1)**
    5:23
**provider (1)**
    8:17
**Public (1)**
    6:13
**purposes (1)**
    4:23
**purview (1)**
    8:15
**put (2)**
    10:15;12:20

**R**

**reached (1)**
    15:17
**reaching (1)**
    15:18
**read (2)**
    4:6;19:1
**really (1)**
    18:20
**reassignment (1)**
    12:22
**recall (6)**
    5:7,12;9:3;13:15;
    17:7,9
**receive (2)**
    6:1,22
**recently (1)**
    6:4
**recommendation (5)**
    12:5,11,14,15,17
**recommendations (2)**
    11:14,19
**record (4)**
    4:7;10:2;13:17;
    19:12
**referring (2)**
    4:23;18:7
**refresh (1)**

5:12
**regard (1)**
    16:9
**regarding (3)**
    7:19,23;11:23
**region (1)**
    15:16
**regional (1)**
    16:6
**register (1)**
    7:3
**registered (2)**
    7:2,3
**regular (5)**
    11:9,10;13:25;14:2,5
**regularly (2)**
    11:3,6
**Rehanna (1)**
    4:22
**related (1)**
    8:10
**repeat (3)**
    11:17;12:8;17:18
**represent (1)**
    4:21
**request (5)**
    12:20,20;13:15;
    14:24;17:8
**requested (3)**
    12:25;13:13;15:17
**requests (3)**
    11:15,20;17:1
**respect (1)**
    12:18
**responsible (2)**
    11:13,19
**restate (1)**
    13:8
**retaliate (1)**
    7:14
**retired (2)**
    6:11,12
**review (2)**
    8:6;10:4
**Right (4)**
    6:19;10:4;15:12,23
**Robert (1)**
    6:5
**ruptured (1)**
    18:8

**S**

**sake (1)**
    9:20
**same (3)**
    5:13;12:13;17:22
**second (1)**
    13:15
**sector (1)**
    6:14,17
**send (2)**
    15:17;17:1

**sense (1)**
    18:4
**sent (5)**
    10:6,7;14:19,23;
    15:16
**Service (1)**
    6:13
**services (1)**
    9:12
**sheet (1)**
    10:22
**Sidney (1)**
    4:16
**sign (1)**
    4:6
**signature (2)**
    19:1,14
**simplier (1)**
    13:11
**sit (1)**
    14:10
**situation (1)**
    18:8
**somebody (2)**
    16:17;18:8
**sometime (1)**
    13:16
**sorry (2)**
    15:9;19:6
**sort (1)**
    18:9
**speaking (1)**
    12:19
**specialist (1)**
    16:6
**specifically (1)**
    16:22
**speculation (2)**
    17:15;18:19
**started (1)**
    6:8
**state (2)**
    6:16;7:10
**States (1)**
    6:13
**status (1)**
    16:8
**step (1)**
    16:25
**steps (1)**
    12:16
**still (2)**
    5:18;13:7
**stipulate (1)**
    4:8
**submit (2)**
    16:16;17:4
**subsequent (1)**
    6:2
**sufficient (1)**
    4:10
**sure (2)**
    9:7;15:8

**surgery (14)**
    11:14,15,20;12:6,12,
    15,24;13:1,13;14:24;
    17:1,12,20;18:17
**sworn (1)**
    4:2
**System (4)**
    6:21;9:6,15,18
**systems (1)**
    16:6

**T**

**talked (1)**
    16:12
**talking (3)**
    4:8;10:11;18:10
**TCCT (4)**
    15:18;16:16,21;17:5
**team (1)**
    16:22
**testified (2)**
    4:3;5:4
**testifying (1)**
    7:14
**testimony (3)**
    5:13;7:5,12
**Thanks (1)**
    4:12
**thinking (1)**
    13:10
**three (1)**
    15:23
**today (5)**
    7:6,12,14;14:10;
    18:24
**today's (1)**
    10:5
**Tony (1)**
    4:21
**trail (1)**
    15:4
**transgender (2)**
    16:21,24
**treating (1)**
    18:13
**treatment (12)**
    7:18,19,23;8:1,5,6,7,
    20,20;9:1,2;18:10
**true (1)**
    14:9
**two (4)**
    13:1;15:8,23;16:9
**type (1)**
    5:7

**U**

**Understood (1)**
    5:22
**United (1)**
    6:13
**University (2)**

6:3,6
**unless (1)**
    5:20
**up (3)**
    7:22;8:12,16
**urgency (1)**
    18:4
**usually (1)**
    8:19

**V**

**Vague (1)**
    12:7
**Valley (1)**
    6:21
**various (1)**
    13:7
**vote (1)**
    16:15

**W**

**waive (1)**
    19:1
**waived (1)**
    19:14
**way (1)**
    7:11
**weren't (1)**
    14:18
**what's (1)**
    6:16
**Without (2)**
    13:17;18:13
**witness (1)**
    4:5
**work (4)**
    6:7,14,19,21
**Wow (1)**
    5:7
**write (1)**
    16:19
**wrote (1)**
    16:22

**Y**

**years (3)**
    5:6;9:4,4

**Z**

**Zoom (1)**
    4:10

**0**

**002649 (1)**
    14:13
**002650 (1)**
    15:11
**002654 (1)**

15:25

**1**

**10 (4)**
  10:7,19,20;14:12
**10:33 (1)**
  19:13
**13 (2)**
  10:25;13:21
**14 (1)**
  14:20
**1528 (1)**
  10:21
**1995 (1)**
  6:2
**19CV1169 (1)**
  5:1

**2**

**2008 (1)**
  6:9
**2015 (3)**
  9:15,18,19
**2017 (2)**
  10:25;13:12
**2018 (3)**
  13:16,21;14:20
**2019 (1)**
  6:10
**25 (1)**
  5:6