# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TONY FISHER, aka KELLIE REHANNA, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF PRISONS, et al, <br> Defendants. | CASE NO.: 4:19CV1169 <br><br> JUDGE SARA LIOI |

### PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSIONS AND INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26, 33 and 36, Defendants Federal Bureau of Prisons ("BOP") and Federal Correctional Institution Elkton ("FCI-Elkton") (collectively, "Defendants"), propound their first set of requests for admissions and interrogatories, to which Plaintiff Tony Fisher, aka Kellie Rehanna ("Plaintiff") shall respond separately and fully, within the time and in the manner prescribed by the Federal Rules of Civil Procedure and in accordance with the instructions and definitions set forth below.

### DEFINITIONS

As used herein:

1. "Plaintiff" shall refer to the Plaintiff in the above-captioned case, Tony Fisher, aka Kellie Rehanna.

2. "Defendants" shall refer to the Federal Bureau of Prisons and Federal Correctional Institution Elkton.

6. "You" or "your" means the Plaintiff in this action, her attorneys, representatives, agents, or other persons acting under, by, or through her, or subject to her control or supervision, and all persons acting on her behalf.

7. "Complaint" means the Complaint filed in this action on May 21, 2019, ECF No. 1, as well as any subsequent complaint filed in this action.

8. The words "and" and "or" also have the meaning "and/or."

9. "Identify" shall have the following meanings:

    a. When used with persons, shall mean to state the person's full name, current employer, current job title, and contact information, including phone number, mailing address, and email address;

    b. When used in reference to a Document or other tangible thing, shall mean to state the type of Document, its date, the identity of its author(s) and recipient(s), any title and/or serial number or file number appearing on the Document, the identity of its present custodian, its present location and a brief description of its subject matter.

    c. When used in reference to a fact or other item, shall mean a sufficient description of the fact to enable further investigation and shall include (as relevant) information such as who, what where, when, why and how.

10. The use of the singular form of any word includes the plural and vice versa.

11. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

12. The use of the word "including" shall not be interpreted as a limitation and, instead shall be interpreted as "including but not limited to."

13. The words "concerning" (and its variations), "regarding" (and its variations) and "relating" (and its variations) and "referring" or "reflecting" are used in their broadest sense and mean constituting, defining, containing, embodying, identifying, stating, supporting, concerning, dealing with, or in any other way pertaining to.

## INSTRUCTIONS

1. If, in responding to these discovery requests, you encounter what you deem to be an ambiguity when construing any discovery request, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering.

2. In the event that you object to answering any of these discovery requests, state with specificity the ground(s) for objection and the basis for asserting that such ground is applicable. The objection and basis should be provided separately for each contested request. An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

3. No part of a discovery request should be left unanswered merely because an objection is interposed to another part of the request. You should answer any portion of the request, and provide any document or portion thereof, to which the objection does not apply, and specify the portion to which you are responding.

4. If you contend that requested information or documents are not subject to disclosure in whole or part on the basis of privilege or otherwise, please provide a privilege log setting forth the basis for such privilege in accordance with Federal Rule of Civil Procedure 26(b)(5)(A).

5. These discovery requests seek all responsive documents in your possession, custody, or control, or in the possession, custody, or control of your attorneys, agents, representatives, and any other person acting for you or on your behalf.

6. Unless otherwise stated, the relevant time period for these document requests is the entire time period covered by the allegations in your Complaint.

7. These discovery requests shall be deemed continuing in nature so as to require

3

responses and production to be supplemented in accordance with Federal Rule of Civil Procedure 26(e).

**REQUESTS FOR ADMISSIONS**

1. Admit that Plaintiff was formally diagnosed with Gender Dysphoria by the FCI-Elkton medical staff on July 7, 2015.

   RESPONSE:   Admit.

2. Admit that Plaintiff began hormone treatment at FCI-Elkton on October 2, 2015.

   RESPONSE:   Admit, although Plaintiff received the first treatment on October 8, 2015.

3. Admit that Plaintiff currently is receiving medical treatment for her Gender Dysphoria.

   RESPONSE:   Admit, but reserve the right to challenge the effectiveness of this treatment as Plaintiff still suffer from lack of adequate medical cure (SRS).

4. Admit that Plaintiff currently is receiving psychotherapy as treatment for her Gender Dysphoria.

   RESPONSE:   Admit, but reserve the right to challenge the effectiveness of this treatment as I still suffer from lack of adequate medical cure (SRS).

5. Admit that Plaintiff currently is receiving hormone therapy as treatment for her Gender Dysphoria.

   RESPONSE:   Admit.

6. Admit that in 2018, Plaintiff's laboratory test results revealed elevated Estradiol levels.

   RESPONSE:   Admit, and specifically states that Plaintiff's levels through current day

4

are still dangerously elevated.

7. Admit that in August 2018, Plaintiff's Estrogen level peeked at 519.3 pg/ml.

   RESPONSE: Admit.

8. Admit that in December 2018, Plaintiff's Estrogen level was 715 pg/ml.

   RESPONSE: Admit.

9. Admit that in spring 2019, BOP concluded that Plaintiff's most recent laboratory results indicated that Plaintiff's hormone levels had not been maximized or stabilized.

   RESPONSE: Plaintiff cannot admit or deny because of the way the request is worded. The maximum acceptable range is 200pg/ml, and Plaintiff's level has remained well above 200pg/ml. That levels have not stabilized is not Plaintiff's fault. The fact that her levels have never stabilized doesn't preclude the surgery. A regiment of high doses of hormone replacement therapy is potentially dangerous for Plaintiff and may result in servere medical contraindications. See WPATH SOC, 7th Ed. at 60 (Criterial for metoidioplasty or phallopastry in FtM and vaginoplasty in MtF patients) referred to Plaintiff's memorandum in opposition to Defendant's motion to dismiss ("Memo in Opp.") (Doc. 29, Page ID # 11).

10. Admit that an acceptable range for Estrogen in a premenopausal adult female is no greater than 200 pg/ml.

    RESPONSE: Admit.

11. Admit that for many months Plaintiff was above the acceptable range for Estrogen.

5

RESPONSE:  Admit, and specifically state that Plaintiff continues to be above the acceptable range.

12. Admit that shortly after Plaintiff's laboratory tests revealed elevated Estradiol levels, Plaintiff stopped using Estradiol for two weeks.

    RESPONSE:  Admit that Plaintiff's tests revealed elevated Estradiol levels, but it was not shortly after—it was many months after Plaintiff's laboratory tests revealed elevated Estradiol levels and Plaintiff did not stop using Estradiol by her own choosing.  Plaintiff specifically states that she completed the Administrative Remedy process regarding her concerns of continual high levels, and then Dr. Stahl (with BOP's TCCT team) ordered the 2 week pause in HRT to allow her levels to completely reverse to normal "male" estrogen and testosterone levels.

13. Admit that Plaintiff has been evaluated by BOP medical officials for sex reassignment surgery.

    RESPONSE:  Admit.

14. Admit that BOP's Chief Medical Officer determined that Plaintiff was ineligible for sex reassignment surgery.

    RESPONSE:  Admit.

15. Admit that BOP's Chief Medical Officer determined that Plaintiff was ineligible for sex reassignment surgery for three reasons:  (1) Plaintiff had not yet reached the maximum benefit from hormone therapy; (2) Plaintiff's hormone levels were unstable; and (3)

6

Plaintiff was not eligible for transfer to a female prison.

RESPONSE: Admit that Plaintiff was denied SRS for three reasons, but specifically state that her medical records (Medical Records, Doc. 1, Page ID # 117) and Memo in Opp. (Doc. 29, Page ID # 227) and reveals the truth. See also Memorandum Opinion, Doc. 31, Page ID # 26-29)

16. Admit that in spring 2019, BOP evaluated whether Plaintiff should be transferred to a female facility.

    RESPONSE: Plaintiff states that she made reasonable inquiry and that the information she knows or can readily obtain is insufficient to enable her to admit or deny, except that she is aware of Administrative Remedy #954868.

17. Admit that in spring 2019, BOP concluded that Plaintiff was not eligible for transfer to a female facility.

    RESPONSE: Admit only that BOP made this decision, and Plaintiff specifically states she first heard about this decision after she filed her case; and that she meets the requirements for SRS approval.

18. Admit that BOP's Clinical Guidance Publication for the Medical Management of Transgender Inmates states that "gender-affirming surgery may be appropriate for some and is considered on a case-by-case basis."

    RESPONSE: Admit, but specifically state that Plaintiff meets all requirements for SRS by both WPATH SOC and the BOP's Clinical Guidance Publication for the Medical Management of Transgender Inmates.

19. Admit that in 2018, the BOP Transgender Clinical Care Team considered Plaintiff's request for sex reassignment surgery and recommended, among other things, that Plaintiff continue hormone therapy to maintain/maximize hormone levels.

    RESPONSE: Admit that Plaintiff was informed of this only, and specifically state that she meet all requirements for SRS by both WPATH SOC and the BOP's Clinical Guidance Publication for the Medical Management of Transgender Inmates.

## INTERROGATORIES

1. Identify all material facts that support Plaintiff's contention that BOP has a blanket policy against providing sex reassignment surgery to inmates that have gender dysphoria.

    ANSWER: Pursuant to Federal Civil Rule 33(d), Plaintiff responds as follows: Medical Clinical Encounter-Administrative Note by J. Barnes dated 1/19/18 (Medical Record at 113-114, 117, 118) Memo in Opp., Doc. 29, Page ID # 722); Administrative Remedy: 926837 and 954868; and Administrative Record, Doc. 1, Page ID # 369, 371, 372, 373, 383; and Psychological Record, Doc.1, Page ID # 202. I will supplement in accordance with the Federal Rules of Civil Procedure, Local Rules of this Court or Orders of this Court, if any.

2. Identify all material facts that support Plaintiff's contention that Plaintiff is a medically appropriate candidate for sex reassignment surgery.

    ANSWER: Pursuant to Federal Civil Rule 33(d), Plaintiff responds as follows: Review Administrative Remedy at 926837, 954868; WPATH SOC; BOP's Clinical Guidance Publication for the Medical Management of Transgender Inmates; Multiple electronic communications/notes with staff as submitted with compliant indicating

8

Plaintiff was informed by Warden Merlak (Psychological Record, Doc. 1, Page ID # 202, 207), Psychology Services (Psychological Record, Doc. 1, Page ID # 184, 189, and 202), and Medical Services (Medical Record, Doc. 1, Page ID # 83, 85), that SRS was found to be medically necessary for me; and Medical Clinical Encounter-Administrative Note by Lori Hunter, NP-C, dated 2/13/18 as submitted with complaint (Doc. 1, at Page ID # ___ ) indicating that Plaintiff meets both the WPATH SOC and BOP requirements for SRS. I will supplement in accordance with the Federal Rules of Civil Procedure, Local Rules of this Court or Orders of this Court, if any.

Dated: January 14, 2021

JENNIFER B. DICKEY
Acting Assistant Attorney General

By: /s/ *Joshua E. Gardner*
Joshua E. Gardner (FL Bar No. 302820)
Special Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Rm. 11502
Washington, D.C. 20005
Tele: (202) 305-7583
Fax: (202) 616-8460
Joshua.e.Gardner@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Defendants' First Set of Requests for Admission and Interrogatories was served on counsel for Plaintiff via email on January 14, 2021.

*/s/Joshua E. Gardner*
Joshua E. Gardner

9

## **CERTIFICATE OF SERVICE**

I hereby certify that Plaintiff's responses and answers to Defendants' First Set of Requests for Admission and Interrogatories was served on counsel for Defendant via email on March 15, 2021.

                                                                                  */s/Edward A. Icove*
                                                                                   Edward A. Icove

## DECLARATION OF KELLIE REHANNA AKA TONY FISHER

I, Kellie Rehanna aka Tony Fisher, hereby certify as follows:

1. I am the plaintiff in *Tony Fisher aka Kellie Rehanna*, Case No. 4:19-cv-1169, United States District Court, Northern District of Ohio, Eastern Division.

2. The answers to the interrogatories are true to my knowledge and belief.

3. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

__March 9, 2021__  
DATE

_Kellie Rehanna_ / _Tony Fisher_  
Kellie Rehanna aka Tony Fisher